**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

FIGGIE INTERNATIONAL, INCORPORATED,
Plaintiff-Appellee,

v.

No. 98-1739

DESTILERIA SERRALLES,
INCORPORATED,
Defendant-Appellant.

Appeal from the United States District Court
for the District of South Carolina, at Charleston.
Falcon B. Hawkins, Senior District Judge.
(CA-96-330-1-2)

Argued: May 7, 1999

Decided: August 20, 1999

Before WIDENER, MOTZ, and TRAXLER, Circuit Judges.

_____

Affirmed by published opinion. Judge Traxler wrote the opinion, in
which Judge Widener and Judge Motz joined.

_____

**COUNSEL**

**ARGUED:** Harold Alan Oberman, OBERMAN & OBERMAN,
Charleston, South Carolina, for Appellant. James Earle Reeves,
BARNWELL, WHALEY, PATTERSON & HELMS, L.L.C.,
Charleston, South Carolina, for Appellee. **ON BRIEF:** Marvin I.
Oberman, OBERMAN & OBERMAN, Charleston, South Carolina;
A. Arthur Rosenblum, Charleston, South Carolina, for Appellant. B.

Craig Killough, BARNWELL, WHALEY, PATTERSON & HELMS, L.L.C., Charleston, South Carolina, for Appellee.

_____

**OPINION**

TRAXLER, Circuit Judge:

This action arises out of a sales agreement between Destileria Serralles, Inc. ("Serralles"), a bottler of rum, and Figgie International, Inc. ("Figgie"), a manufacturer of bottle-labeling equipment. Following Figgie's unsuccessful attempts to provide satisfactory bottle-labeling equipment to Serralles under the agreement, Serralles returned the equipment and received a refund of the purchase price.

When a dispute arose as to whether Serralles was entitled to damages for breach of the agreement, Figgie instituted this declaratory judgment action, seeking a determination that Serralles is limited under the agreement to the exclusive remedy of repair, replacement, or return of the equipment. See S.C. Code Ann. § 36-2-719 (Law. Co-op. 1976). Serralles, on the other hand, contends that it is entitled to the full array of remedies provided by the South Carolina Uniform Commercial Code (the "UCC" or "Code"). See S.C. Code Ann. §§ 36-2-712, -714, and -715 (Law. Co-op. 1976). The district court granted Figgie's motion for summary judgment and denied Serralles' motion for partial summary judgment. Finding no error in the district court's judgment, we affirm.

I.

Serralles, a distributor of rum and other products, operates a rum bottling plant in Puerto Rico. In June 1993, Serralles and Figgie entered into a written agreement under which Figgie was to provide bottle-labeling equipment capable of placing a clear label on a clear bottle of "Cristal" rum within a raised glass oval. When the bottle-labeling equipment was installed in the Serralles plant in April 1994, however, problems arose immediately. Over the course of the next several months, Figgie attempted to repair the equipment to achieve satisfactory performance. However, by November 1994, the equip-

2

ment still did not work properly, prompting Figgie to refund the purchase price and Serralles to return the equipment.

Additionally, Serralles requested that Figgie pay for alleged losses caused by the failure of the equipment to perform as expected and by the delay in obtaining alternative equipment. Unable to reach a compromise, Figgie instituted this declaratory judgment action, asserting that it owed no further obligations to Serralles under the agreement because Serralles' remedy for breach was limited to repair, replacement, or refund -- both under the written terms and conditions of the sales agreement and pursuant to usage of trade in the bottle-labeling industry.

With regard to the alleged limitation of remedy in the sales agreement, Figgie asserts that standard terms and conditions accompanying the sales agreement contained the following language:

> Buyer's exclusive remedies for all claims arising out of this agreement and the transaction to which it pertains shall be the right to return the product at buyer's expense, and, at seller's option, receive repayment of the purchase price plus reasonable depreciation for the repair and/or replacement of the product. . . . Seller shall not be subject to any other obligations or liabilities whatsoever with respect to this transaction, and shall under no circumstances be liable for delays, or for any consequential, contingent or incidental damages.

J.A. 13. Figgie, however, has been unable to produce the original sales agreement, asserting that it was lost during a business reorganization. Hence, Figgie is forced to rely upon standard terms and conditions that purportedly accompanied every sales agreement entered into during the time that the Serralles agreement was executed. Serralles, on the other hand, has produced its copy of the agreement, the last page of which stated that "[t]his quotation is made subject to the additional general terms and conditions of sale printed on the reverse hereof," but the reverse side of the page is blank. Figgie asserts that the absence of the general terms and conditions on Serralles' copy is most certainly a copying mistake, whereas Serralles asserts that they were never part of the agreement.

3

Although conceding at oral argument that a factual dispute exists as to whether the written standards and conditions accompanied the original sales agreement, Figgie asserts that it is nevertheless entitled to summary judgment because, under the UCC, usage of trade in the bottle-labeling industry would supplement the sales agreement with the identical limited remedy of repair, replacement, or refund. See S.C. Code Ann. § 36-1-205(3) (Law. Co-op. 1976). Serralles, of course, disputes that usage of trade imposes this limitation and, alternatively, asserts that because the limited remedy has "fail[ed] of its essential purpose," S.C. Code Ann. § 36-2-719(2), it is entitled to the full array of remedies provided by the UCC.

## II.

We review the district court's judgment below de novo. See Halperin v. Abacus Tech. Corp., 128 F.3d 191, 196 (4th Cir. 1997). Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The rule requires that the court enter summary judgment against a party who, "after adequate time for discovery . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In determining whether there is a genuine issue of material fact, we view the facts in the light most favorable to the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

## III.

We first address Serralles' contention that the district court erred in granting Figgie's motion for summary judgment. Specifically, the district court concluded that usage of trade in the bottle-labeling industry supplemented the agreement between Figgie and Serralles with the limited remedy of repair, replacement, or return in the event of a breach. Serralles disputes that usage of trade supplies such a limited remedy and, in any event, contends that the limited remedy failed of its essential purpose.

4

Because the crux of this appeal centers on whether the agreement between the parties limited Serralles' remedy for breach to repair, replacement, or refund of the purchase price, we begin with the language of S.C. Code Ann. § 36-2-719, which governs modifications or limitations to the remedies otherwise provided by the UCC for the breach of a sales agreement. Section 36-2-719 provides that:

> (1) Subject to the provisions of subsections (2) and (3) of this section and of the preceding section (§ 36-2-318) on liquidation of damages,
>
> (a) the agreement may provide for remedies in addition to or in substitution for those provided in this chapter and may limit or alter the measure of damages recoverable under this chapter, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of nonconforming goods or parts; and
>
> (b) resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy.
>
> (2) Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this act.
>
> (3) Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not.

Under these provisions, parties to a commercial sales agreement may provide for remedies in addition to those provided by the UCC, or limit themselves to specified remedies in lieu of those provided by the UCC. An "[a]greement" for purposes of the UCC is defined as "the bargain of the parties in fact as found in their language or by implication from other circumstances including course of dealing or usage

5

of trade. . . ." S.C. Code Ann.§ 36-1-201(3) (Law. Co-op. 1976) (emphasis added). In turn, the Code provides that"[a] course of dealing between parties and any usage of trade in the vocation or trade in which they are engaged or of which they are or should be aware give particular meaning to and supplement or qualify terms of an agreement." S.C. Code Ann. § 36-1-205(3); see also Weisz Graphics v. Peck Indus. Inc., 403 S.E.2d 146, 150 (S.C. Ct. App. 1991) (holding that industry standard supplemented the express provisions of a written contract).

"Usage of trade" is defined as "any practice or method of dealing having such regularity of observance in a place, vocation or trade as to justify an expectation that it will be observed with respect to the transaction in question. . . ." S.C. Code Ann. § 36-1-205(2) (Law. Co-op. 1976). Where possible and reasonable, an applicable course of dealing or usage of trade will be construed as consistent with the agreement's express terms. See S.C. Code Ann. § 36-1-205(4) (Law. Co-op. 1976).

A.

Serralles contends that the district court erred in concluding that usage of trade in the bottle-labeling industry supplemented the agreement between these parties with the limited remedy of repair, replacement, or refund. We disagree.

In support of its motion for summary judgment, Figgie submitted several affidavits of persons with extensive experience in the bottle-labeling and packaging industry, attesting that sellers in the industry always limit the available remedies in the event of a breach to repair, replacement, or return, and specifically exclude consequential damages. While Serralles asserts that it did not "acquiesce" in this practice, it has offered no evidence to contradict the affidavits submitted by Figgie. Accordingly, the district court correctly concluded that usage of trade would limit Serralles to the exclusive remedy of repair, replacement, or return.

Serralles also contends that it cannot be limited to the remedy of repair, replacement, or return because the written agreement does not "explicitly" state that this remedy is exclusive. As noted previously,

6

S.C. Code Ann. § 36-2-719(1)(b) states that"resort to a remedy as provided [for under subsection (1)(a)] is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy." Relying upon the case of <u>Myrtle Beach Pipeline Corp. v. Emerson Elec. Co.</u>, 843 F.Supp. 1027 (D.S.C. 1993), <u>aff'd</u>, 46 F.3d 1125 (4th Cir. 1995) (unpublished), which held that "[t]he [UCC] requires that the exclusivity of a limited remedy be made explicit . . . and failure to do so will result in the limited remedy's being construed as an optional additional remedy and will not preclude the availability of other remedies under the Code," <u>id.</u> at 1041, Serralles contends that a limited remedy imposed or implied by trade usage cannot be an exclusive remedy because it is neither "expressly agreed to" nor "explicit." We disagree.

Section 36-2-719 provides that the "agreement" between the parties may limit remedies. Section 36-1-201(3) defines"[a]greement" as including terms "impli[ed] from other circumstances including course of dealing or usage of trade," and § 36-1-205 reiterates that usage of trade will supplement and qualify the terms of an agreement provided it can be reasonably construed as being consistent with the written terms. It seems clear to us that, pursuant to these provisions, usage of trade will supplement agreements and may indeed impose an exclusive remedy in the event of a breach. In so holding, we agree with those circuits which have rejected the contention that a limited remedy cannot be exclusive if imposed by usage of trade. <u>See Western Indus. Inc. v. Newcor Canada Ltd.</u>, 739 F.2d 1198, 1204-05 (7th Cir. 1984) (rejecting contention that trade custom cannot limit liability because § 2-719(1)(b) of the UCC provides that resort to a remedy is optional unless expressly agreed to be exclusive); <u>Transamerica Oil Corp. v. Lynes, Inc.</u>, 723 F.2d 758, 766 (10th Cir. 1983) (holding that, under the UCC, "[u]sage of trade may add an exclusive remedy to an agreement"); <u>Posttape Assoc. v. Eastman Kodak Co.</u>, 537 F.2d 751, 756-57 (3d Cir. 1976) (holding that "[t]he totality of the agreement . . . must include a provision, present in the trade usage, or otherwise expressed, that the limited remedy is an exclusive one"). And we note that <u>Myrtle Beach Pipeline</u> is not to the contrary. In that case, the district court held that it would not construe a remedy-- provided for by the <u>written</u> terms of the agreement -- as being exclusive unless such exclusivity was explicitly set forth in the same agreement.

7

Myrtle Beach Pipeline neither addressed nor involved the imposition of an exclusive or limited remedy by usage of trade.

B.

Having determined that usage of trade supplemented the agreement between the parties with the exclusive remedy of repair, replacement, or return, we turn to Serralles' contention that the limited remedy "fail[ed] of its essential purpose," entitling it to nevertheless pursue the full array of UCC remedies. See S.C. Code Ann. § 36-2-719(2). We conclude that it did not.

Section 36-2-719(1)(a) specifically contemplates that parties to an agreement may, as they did in this case, limit available remedies in the event of a breach to "return of the goods and repayment of the price or to repair and replacement of nonconforming goods or parts." Section 36-2-719(2), however, provides that the general remedies of the UCC will apply, notwithstanding an agreed-upon exclusive remedy, if the "circumstances cause [the remedy] . . . to fail of its essential purpose." Under this provision, "where an apparently fair and reasonable clause because of circumstances fails in its purpose or operates to deprive either party of the substantial value of the bargain, it must give way to the general remedy provisions of[the Code].'" Bishop Logging Co. v. John Deere Indus. Equip. Co. , 455 S.E.2d 183, 190 (S.C. Ct. App. 1995) (quoting S.C. Code Ann.§ 36-2-719, Official Comment 1). In the instant case, however, there is no evidence that the limited remedy of repair, replacement, or return has failed of its essential purpose or that the contracting parties have been deprived of the substantial value of the bargain.

Serralles argues that Figgie, by first attempting to repair the equipment, elected to pursue repair as the exclusive remedy and, thereby, forgo enforcement of the remedy of return and reimbursement. From this premise, Serralles contends that Figgie's failure to repair the machines resulted in the remedy failing of its essential purpose. We find no support in the language of the UCC or in the cases interpreting it for this novel argument, and no evidence that this contemplated remedy of return and refund, once invoked, failed of its essential purpose.

8

While Serralles is correct that a limited remedy of repair or replacement can fail of its essential purpose where the seller's repair or replacement is unsuccessful, see Bishop Logging, 455 S.E.2d at 192-93, Serralles' remedies were limited to repair, replacement, or return, see Marr Enter., Inc. v. Lewis Refrigeration Co., 556 F.2d 951 (9th Cir. 1976) (holding that a limited remedy of repair or refund did not fail of its essential purpose). Figgie installed the bottle-labeling equipment in April and, over the course of the next several months, attempted to find solutions to resolve the problems encountered. In November, when attempts to fix the equipment had so far failed, the equipment was returned and the purchase price refunded. Hence, the remedies invoked were exactly those envisioned by§ 36-2-719(1)(a) and contemplated by the agreement.

Serralles' contention that a seller eliminates the remedy of "refund" simply by electing to attempt repair or replacement is unpersuasive. On the contrary, one would expect a manufacturer or seller to first attempt to repair or replace equipment in order to meet its contractual obligations to the purchaser, and only resort to a return and refund if unsuccessful in doing so -- particularly in the context of an agreement between two commercial entities for the purchase of sophisticated equipment.[1] Accordingly, the district court correctly concluded that the limited remedy of repair, replacement, or return did not fail of its essential purpose.

C.

Serralles' final contention is that Figgie made various representations and guarantees during the months following initial installation of the equipment that should be construed as new agreements not subject to a limited remedy, or as modifications to or waivers of the lim-

_____

[1] We do not suggest, of course, that a limited remedy of repair, replacement, or refund can never fail of its essential purpose. For example, the court in Marr indicated that such a remedy may indeed fail of its essential purpose if defects or problems are "not . . . detectable until such a late time that under the totality of the circumstances . . . a refund of the purchase price would have been totally inadequate." Id. at 955. Serralles, however, was aware of the problems from the outset and actively participated in the attempts to repair.

9

ited remedy provision in the original agreement. For example, Serralles relies upon Figgie's assurances that it was "committed 100% to the success of the . . . project," that it would continue efforts to meet the obligations under the agreement, that it expected to work out the labeling problems, that it "guarantee[d] and [took] full responsibility" for resolving the problems, and that it remained committed to "ensure completely satisfactory performance of the . . . equipment . . . as soon as possible."

Having reviewed the communications, we find no evidence of an intent on the part of either party to modify the existing contractual relationship or to create a new one. Rather, it is clear that all of the communications relied upon by Serralles took place while Figgie was attempting to repair the equipment in accordance with the limited remedy available under the original sales agreement. Serralles has directed us to no statement or promise by Figgie which could reasonably be interpreted as specifying additional remedies which would be available in the event Figgie was unsuccessful in its attempts to first repair the equipment. Nor is there any evidence of an agreement by Figgie to waive the existing limitation of remedy in exchange for the opportunity to repair the equipment.**2**

IV.

Serralles' also appeals the district court's denial of its motion for partial summary judgment. Specifically, Serralles asserts that the bottle-labeling equipment did not perform as required by the agreement, that Figgie was given a reasonable time to repair the equipment, that the agreement did not include a provision limiting the available remedies in the event of a breach, and that Figgie promised to repair the equipment but failed. Alternatively, Serralles asserts that, even if

_____

**2** The district court held that, even assuming "there was a meeting of the minds in the written communications between the parties and that each new promise or guarantee created a contract to provide a working labeling machine," Figgie was entitled to summary judgment because any such new contracts would also be subject to the limited remedy supplied by trade usage. Because it is clear to us that no new contracts were created as a matter of law, we need not decide whether usage of trade would supply a limited remedy to subsequent contracts to repair.

10

the original agreement contained a limited remedy provision, subsequent agreements and guarantees contained no such limitation. The district court denied Serralles' motion, finding several genuine issues of material fact which precluded summary judgment on these issues.

In light of our determination that Figgie is entitled to summary judgment, Serralles' motion for partial summary judgment must fail. We note, however, that, although there appears to be no dispute that the bottle-labeling equipment supplied by Figgie had not performed properly when it was returned, the district court correctly concluded that genuine issues of material fact existed regarding whether Figgie had a reasonable amount of time to correct the problems and whether the original agreement included the standard terms and conditions. Accordingly, we conclude that the district court properly denied Serralles' motion for partial summary judgment.

V.

For the foregoing reasons, we conclude that the district court did not err in denying Serralles' motion for partial summary judgment or in granting Figgie's motion for summary judgment. Accordingly, the judgment below is affirmed.

AFFIRMED

11