UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

SOUTHEASTERN FERTILITY CENTER,
Plaintiff-Appellant,

v.

THE AETNA CASUALTY  AND SURETY
COMPANY,*
Defendant-Appellee.

No. 99-1736

Appeal from the United States District Court
for the District of South Carolina, at Charleston.
Patrick Michael Duffy, District Judge.
(CA-97-1602-2)

Argued: January 25, 2000

Decided: February 28, 2000

Before NIEMEYER, Circuit Judge, HAMILTON, Senior Circuit
Judge, and J. Frederick MOTZ, Chief United States District Judge
for the District of Maryland, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Donald Bruce Clark, Arnold Samuel Goodstein, ROSEN,
GOODSTEIN & HAGOOD, L.L.C., Charleston, South Carolina, for

_____

*Although Aetna is now known as the Travelers Casualty and Surety
Company, we will still refer to the appellee in this case as Aetna.

Appellant. Mark Hedderman Wall, OGLETREE, DEAKINS, NASH, SMOAK & STEWART, Charleston, South Carolina, for Appellee. **ON BRIEF:** Linda B. Foster, Andrew R. Diamond, WEISSMAN, NOWACK, CURRY & WILCO, P.C., Atlanta, Georgia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

In this action for coverage under successive general commercial liability insurance policies, Southeastern Fertility Center, P.A. (Southeastern) challenges the district court's grant of summary judgment in favor of Aetna Casualty & Surety Co. (Aetna) on Southeastern's claims alleging breach of contract and breach of the duty of good faith and fair dealing with respect to Aetna's obligations under the policies to provide indemnification and a defense to litigation. Southeastern also challenges the district court's failure to certify two particular questions to the South Carolina Supreme Court. We affirm on the reasoning of the district court.

I

The facts in this case are undisputed. In October 1984, Richard Jablonski (Jablonski) was diagnosed with Hodgkin's Disease. Concerned that treatment for the disease would render him sterile, Jablonski sought treatment from Dr. Grant Patton (Dr. Patton) for the purpose of storing some of his sperm. In late 1984 and early 1985, Jablonski made several deposits of his sperm for frozen storage with Southeastern, a professional association owned by Dr. Patton.

Southeastern stored Jablonski's sperm for over four years. During this time, Jablonski ceased paying storage fees to Southeastern, and Southeastern lost all contact with Jablonski. At some point, Jablonski

2

paid $288 to a collection agency to satisfy his account with Southeastern, but the record is unclear whether the collection agency ever transferred the payment to Southeastern. Operating under the belief that Jablonski had not paid his storage fees for a significant period of time, in October 1989, Southeastern thawed Jablonski's stored sperm and discarded it.

Nearly two years later, in August 1991, Jablonski's wife, Patricia Jablonski, contacted Southeastern in an attempt to retrieve her husband's stored sperm. By this time, Jablonski's treatment for Hodgkin's Disease had left him sterile. Upon contacting Southeastern, Patricia Jablonski learned that her husband's stored sperm had been destroyed.

The Jablonskis subsequently filed a civil action in South Carolina state court against Southeastern, among others, to recover damages for the destruction of Jablonski's stored sperm. Once in 1992, once in 1994, and once in 1995, Southeastern requested that Aetna defend it against the state court action pursuant to several general commercial liability policies. On all three occasions, Aetna refused Southeastern's request.

The South Carolina Medical Malpractice Joint Underwriting Authority, which provided Southeastern an upper limit of $100,000 in coverage, defended Southeastern in the state action. Southeastern eventually settled the case in October 1996 by executing a confession of judgment in favor of Jablonski for $1.1 million, with the stipulation that Jablonski could not enforce the confession of judgment against the assets of Southeastern or its agents. Additionally, under the terms of the settlement, Jablonski possessed the right to collect under any applicable insurance policies held by Southeastern. The Joint Underwriters Association paid its limit of $100,000 to the Jablonskis, leaving $1 million of the judgment unsatisfied.

The present coverage action by Southeastern followed. The case was originally filed in South Carolina state court on April 25, 1997, but was removed to the United States District Court for the District of South Carolina on May 30, 1997, based upon diversity jurisdiction. See 28 U.S.C. § 1332. Southeastern's coverage action asserts two claims under South Carolina law--a breach of contract claim, seeking

3

compensatory damages, and a breach of the duty of good faith and fair dealing claim, seeking compensatory and punitive damages.

Three of the four insurance policies at issue below are at issue in this appeal. All three are general commercial liability policies. The first was issued by Aetna to Dr. Patton and his wife for the coverage period of October 31, 1988 to October 31, 1989. The second was issued by Aetna to Dr. Patton and his wife for the coverage period of October 31, 1989 to October 31, 1990. The third was issued by Aetna to Southeastern for the coverage period of October 31, 1990 to October 31, 1991.

The following policy language at issue in this appeal is identical in all three policies (the Three Policies).

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. . . . The bodily injury or property damage must be caused by an "occurrence."

(J.A. 156).

> This insurance does not apply to: . . . "Property damage" to: . . . (4) Personal property in your care, custody or control . . . .

(J.A. 158).

> "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

(J.A. 164).

> "Property Damage" means:
>
> a. Physical injury to tangible property, including all resulting loss of use of that property; or

4

    b. Loss of use of tangible property that is not physically
    injured.

(J.A. 166).

On March 31, 1998, the parties filed cross motions for summary judgment, including supporting memoranda. After conducting a hearing on the cross motions and considering the parties' supporting memoranda, on February 22, 1999, the district court issued an order granting summary judgment in favor of Aetna on the breach of contract claim and denying summary judgment in favor of Southeastern on the breach of contract claim. In its order, the district court thoroughly explained that it ruled in favor of Aetna on the breach of contract claim involving the Three Policies on the basis that Jablonski's stored sperm constituted his personal property, and therefore, its destruction in 1989 was plainly excluded from coverage under the exclusion for coverage of damage to the personal property of others in the care, custody, and control of the insured. Under the district court's reasoning, the exclusion was applicable regardless of which of the Three Policies was in effect at the time Southeastern destroyed Jablonski's stored sperm.

With respect to Southeastern's cause of action for breach of the duty of good faith and fair dealing, the district court granted summary judgment in favor of Aetna and denied summary judgment in favor of Southeastern to the extent Southeastern's claim alleged bad faith refusal to pay benefits, bad faith refusal to defend, and entitlement to punitive damages. However, relying on the South Carolina Supreme Court's decision in Tadlock Painting Co. v. Maryland Casualty Co., 473 S.E.2d 52 (S.C. 1996), the district court held that Southeastern could proceed to trial on its breach of the duty of good faith and fair dealing claim to the extent Southeastern claimed that Aetna acted in bad faith in the handling or processing of its claim despite the fact that Aetna had not breached any express contractual term of the Three Policies or the fourth policy not at issue in this appeal. The district court refused to grant summary judgment in favor of Southeastern on this remaining portion of its breach of the duty of good faith and fair dealing claim.

On March 4, 1999, Southeastern filed a motion pursuant to Federal Rule of Civil Procedure 59(e) to alter or amend the judgment and/or

5

to certify to the South Carolina Supreme Court the question of when the loss occurred for purposes of triggering coverage under the Three Policies. On March 5, 1999, Southeastern supplemented its Rule 59(e) motion with an additional argument and requested that the district court certify to the South Carolina Supreme Court the question of the applicability of the exclusion for damage to personal property in the care, custody, and control of the insured. The district court denied the motion, as supplemented, in toto on April 7, 1999 on the basis that its prior analysis of Southeastern's claims upon which it granted summary judgment in favor of Aetna was sound.

On May 3, 1999, Southeastern filed a motion, pursuant to Federal Rule of Civil Procedure 54(b), asking the district court to certify its February 22, 1999 and April 7, 1999 orders for immediate appellate review and to stay the trial of the surviving portion of its breach of the duty of good faith and fair dealing claim. The district court granted Southeastern's Rule 54(b) motion and entered final judgment with respect to the claims upon which it granted summary judgment in favor of Aetna.

Southeastern noted a timely appeal. On appeal, Southeastern argues: (1) the district court erred in holding the personal property exclusion precluded coverage under the Three Policies; (2) Jablonski suffered bodily injury within the meaning of the Three Policies when Southeastern destroyed his stored sperm; (3) that because bodily injury is involved with lingering mental anguish, the district court erred in holding that the damage only occurred in 1989 when the stored sperm was actually destroyed; and (4) the district court erred in failing to certify the questions outlined in Southeastern's Rule 59(e) motion to the South Carolina Supreme Court.

II

We review a district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to the non-moving party. See Figgie Int'l, Inc. v. Destileria Serralles, Inc., 190 F.3d 252, 255 (4th Cir. 1999). We review a district court's failure to certify a question to a state's highest court for abuse of discretion. See Lehman Bros. v. Schein, 416 U.S. 386, 391 (1974). Upon review of the briefs and the record, and after consideration of oral arguments, we con-

6

clude that the district court correctly granted summary judgment in favor of Aetna on Southeastern's claims involving the Three Policies and did not abuse its discretion in failing to certify the questions outlined in Southeastern's Rule 59(e) motion to the South Carolina Supreme Court. Accordingly, we affirm the judgment in favor of Aetna on the reasoning of the district court. See Southeastern Fertility Ctr., P.A. v. Aetna Cas. & Sur. Co., Civ. A. No. DKC 2:97-1602-23 (D.S.C. Feb. 22, 1999 & Apr. 7, 1999).

AFFIRMED