# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNPUBLISHED

NELLE B. BROWN,

    *Plaintiff-Appellant,*

v.

UNITED STATES OF AMERICA,

    *Defendant-Appellee.*

No. 99-2400

Appeal from the United States District Court
for the District of South Carolina, at Anderson.
William M. Catoe, Jr., Magistrate Judge.
(CA-99-500-8-13AK)

Argued: October 31, 2000

Decided: January 9, 2002

Before WIDENER, WILKINS, and LUTTIG, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

## COUNSEL

**ARGUED:** Rodney Frank Pillsbury, YACOBI & PILLSBURY,
L.L.C., Greenville, South Carolina, for Appellant. Lee Ellis Berlin-
sky, Assistant United States Attorney, Greenville, South Carolina, for
Appellee. **ON BRIEF:** J. Rene Josey, United States Attorney, Green-
ville, South Carolina, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

PER CURIAM:

Nelle B. Brown (Nelle Brown) appeals a district court order dismissing her medical malpractice claim for injuries suffered by her husband, George Brown (Brown).* Finding no error, we affirm.

### I.

The events giving rise to this suit began in 1945, when Brown injured his back while on active duty in the United States Navy. Brown continued to suffer from a herniated disk after his honorable discharge and underwent a myelogram in 1950 at Lawson Veterans Administration Hospital, in Chamblee, Georgia. During the procedure, iodized oil (Lipiodol) was used as the contrast medium; the oil was not extracted once the myelogram was complete.

Brown was hospitalized in 1951, complaining of pain in his head, neck, back, and legs, dating from the time of the myelogram. He was diagnosed as having meningeal adhesions due to the iodized oil in his ventricular system. However, because the doctors believed this condition would not cause the pain Brown reported, Brown was advised to seek psychiatric assistance if his symptoms worsened. When Brown did seek such assistance, his treating psychiatrist characterized his complaints as "hypochondriacal." J.A. 41.

In November 1951, Brown appeared before the Veterans Administration ("VA") Rating Board and gave a detailed history of his back pathology. He asserted that the myelogram dye had not been properly removed and had scattered over his body, causing continuous, severe headaches. Also, Brown's treating psychiatrist submitted a letter stat-

---

*Nelle Brown filed this action in her individual capacity and in her capacity as personal representative of her husband's estate.

ing that Brown was anxious, depressed, and perhaps schizophrenic. After reviewing the information before it, the VA Rating Board assigned a combined 90 percent disability rating to Brown for (1) "post-operative ruptured interve[r]tebral disc with chronic sciatic neuritis"; and (2) "meningitis, chronic, due to retained iodized oil in the ventri[c]ular system and anxiety reaction, chronic, severe." *Id.* at 44. In 1955, the rating board awarded Brown 100 percent disability for catatonic schizophrenia but determined that Brown was still competent.

In 1958, Brown's treating psychiatrist submitted a letter to the VA Regional office noting that in their first meeting Brown attributed his headaches to the earlier myelogram. The letter stated that Brown's prognosis was "very poor," that he was "sever[e]ly handicapped," and that he suffered from "severe hyp[o]ch[ ]ondriasis." *Id.* at 45A. Brown eventually became bedridden and continued to be so until his death in 1996.

Brown's post-mortem examination revealed that he had been suffering from chronic adhesive arachnoidopathy, the manifestations of which include back pain and other sensory disturbances. The examining doctor also noted that Brown's chronic neurologic disturbances were likely caused by arachnoiditis induced by administration of Lipiodol.

In November 1998, Nelle Brown filed an administrative claim with the United States Department of Veteran Affairs for the severe pain she alleged Brown suffered as a result of the administration of the Lipiodol. The claim was denied, and in February 1999 Brown filed the present action in district court. The Government moved for summary judgment, arguing, as is relevant here, that the suit was time-barred because Nelle Brown failed to file an administrative claim within two years of the accrual of her claim. *See* 28 U.S.C.A. § 2401(b) (West 1994). The district court determined that Brown knew or should have known of the causal connection between his injury and the 1950 myelogram as early as 1951, when Brown informed the rating board that the unremoved Lipiodol was the cause of his symptoms, and no later than 1958, when Brown's psychiatrist submitted the letter recounting Brown's belief that the myelogram

was the cause of headaches. On this basis, the district court granted summary judgment for the Government.

## II.

Nelle Brown contends that the district court erred in granting summary judgment because there were material issues of fact regarding whether Brown's doctors' determination that Brown was a hypochondriac delayed accrual of his claim and whether Brown's mental condition was sufficiently poor to toll the statute of limitations. We review a grant of summary judgment de novo, viewing the disputed facts in the light most favorable to the nonmovant. *See Figgie Int'l, Inc. v. Destileria Serralles, Inc.*, 190 F.3d 252, 255 (4th Cir. 1999). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

Absent waiver, sovereign immunity shields the United States from suit. *See FDIC v. Meyer*, 510 U.S. 471, 475 (1994). The Federal Tort Claims Act (FTCA) provides for a limited waiver of the sovereign immunity of the United States for the torts committed by government employees within the scope of their employment. *See id.* The FTCA provides that "[a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues." 28 U.S.C.A. § 2401(b). A cause of action for medical malpractice accrues under § 2401(b) when the plaintiff knows or should know of his injury and its cause. *See Muth v. United States*, 1 F.3d 246, 249 (4th Cir. 1993).

Here, Brown was aware in November 1951 that the iodized oil remaining in his body from the myelogram was the cause of his severe headaches. He was informed earlier that year that he suffered from meningeal adhesions caused by the oil improperly left in his system. In addition, he clearly drew the connection between the retained oil and his pain when he applied for VA benefits in November 1951. In fact, the VA Board granted him 90% disability based partly on "meningitis, chronic, due to retained iodized oil in the ventri[c]ular system." J.A. 44. We therefore conclude that Brown was aware of his

injury and its cause by November 1951, and his claim against the Government accrued at that time. Consequently, Brown's claim became time-barred in November 1953 unless the statute of limitations was tolled.

Turning to Nelle Brown's tolling argument, we note that the general rule is that mental incapacity does not permit the tolling of the FTCA statute of limitations. *See, e.g.*, *Casias v. United States*, 532 F.2d 1339, 1342 (10th Cir. 1976). However, at least one court has held that tolling may be appropriate when the incompetence allegedly has been caused by the Government's negligence and limits the plaintiff's ability to understand his injury and its cause. *See Oslund v. United States*, 701 F. Supp. 710, 712 (D. Minn. 1988).

We need not decide whether the statute would be tolled under such circumstances, however, because there is a complete lack of evidence showing that Brown was unable to understand his injuries and their cause during the relevant time period. The record demonstrates that Brown had discovered the cause of his injury by November 1951. Moreover, while the records from 1951 show that Brown was anxious and depressed, they also demonstrate that he was able to understand and seek disability benefits for the relationship between the myelogram and his pain. Nelle Brown has failed to offer any evidence of Brown's mental state between November 1951 and November 1953, when the statute would have expired. Accordingly, Brown's claim became time-barred in November 1953.

III.

In sum, we hold that the district court correctly granted summary judgment in favor of the Government.

*AFFIRMED*