UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

MOM'S, INCORPORATED; JOHN ROBERT
COLAPRETE; THEODORE MAZUR BONK;
EDY MILLER; _____, a minor
who sues by Edy Miller, her parent
and next friend; _____, a
minor who sues by Edy Miller, his
parent and next friend; RICHARD
SCOTT MILLER,

     *Plaintiffs-Appellees,*

    v.

CAROL E. WILLMAN, individually and
as Special Agent for the Internal
Revenue Service,

     *Defendant-Appellant,*

    and

CHERYL L. KAST, individually and as
Group Manager for the Internal
Revenue Service; JUDITH WEBER;
CLYDE SANTANA; BOB DUNFORD;
CITY OF VIRGINIA BEACH; CITY OF
NORFOLK; UNKNOWN FEDERAL
AGENTS; UNKNOWN STATE AGENTS;
UNKNOWN CITY OF VIRGINIA BEACH
AGENTS; UNKNOWN CITY OF NORFOLK
AGENTS; UNITED STATES OF AMERICA;
JOHN C. MCDOUGAL; ROBERT E.
BURGESS; ARLENE T. CAMPSEN;
TIMOTHY DARUK; MICHAEL E.
DUNLOW; DONNA L. EASON;

No. 99-2024

GEORGE OVERSTREET; JOHN BRINK;
DAVE ALTMAN; DARYL WARE; JAMES
EDWARDS; ROGER WARREN; DAVID
HUFF; CRAIG CARMEN; JOYCE SUTTON;
LEON COLEMAN; DAVID LIBENGOOD;
BOBBY BASS,

                    *Defendants,*

LESLIE LILLEY,

                    *Movant.*

MOM'S, INCORPORATED; JOHN ROBERT
COLAPRETE; THEODORE MAZUR BONK;
EDY MILLER; _____, a minor
who sues by Edy Miller, her parent
and next friend; _____, a
minor who sues by Edy Miller, his
parent and next friend; RICHARD
SCOTT MILLER,

                    *Plaintiffs-Appellees,*

                    v.                                            No. 99-2025

CLYDE SANTANA, individually and as
Special Agent for the Department of
Alcoholic Beverage Control of
Virginia, Virginia Beach, Virginia;
DAVE ALTMAN, individually and as
Special Agent for the Department of
Alcoholic Beverage Control of
Virginia, Virginia Beach, Virginia;

BRENDA KAY DUNFORD,
Administratrix of the Estate of Bob
Dunford,
                    *Defendants-Appellants,*

                    and

CHERYL L. KAST, individually and as
Group Manager for the Internal
Revenue Service; CAROL E.
WILLMAN, individually and as
Special Agent for the Internal
Revenue Service; JUDITH WEBER;
CITY OF VIRGINIA BEACH; CITY OF
NORFOLK; UNKNOWN FEDERAL
AGENTS; UNKNOWN STATE AGENTS;
UNKNOWN CITY OF VIRGINIA BEACH
AGENTS; UNKNOWN CITY OF NORFOLK
AGENTS; UNITED STATES OF AMERICA;
JOHN C. MCDOUGAL; ROBERT E.
BURGESS; ARLENE T. CAMPSEN;
TIMOTHY DARUK; MICHAEL E.
DUNLOW; DONNA L. EASON; GEORGE
OVERSTREET; JOHN BRINK; DARYL
WARE; JAMES EDWARDS; ROGER
WARREN; DAVID HUFF; CRAIG
CARMEN; JOYCE SUTTON; LEON
COLEMAN; DAVID LIBENGOOD; BOBBY
BASS,
                    *Defendants,*

LESLIE LILLEY,
                    *Movant.*

MOM'S, INCORPORATED; JOHN ROBERT COLAPRETE; THEODORE MAZUR BONK; EDY MILLER; _____, a minor who sues by Edy Miller, her parent and next friend; _____, a minor who sues by Edy Miller, his parent and next friend; RICHARD SCOTT MILLER,

*Plaintiffs-Appellees,*

v.

BRENDA KAY DUNFORD, Administratrix of the Estate of Bob Dunford,

*Defendant-Appellant,*

and

CHERYL L. KAST, individually and as Group Manager for the Internal Revenue Service; JUDITH WEBER; CLYDE SANTANA; CITY OF VIRGINIA BEACH; CITY OF NORFOLK; UNKNOWN FEDERAL AGENTS; UNKNOWN STATE AGENTS; UNKNOWN CITY OF VIRGINIA BEACH AGENTS; UNKNOWN CITY OF NORFOLK AGENTS; UNITED STATES OF AMERICA; JOHN C. MCDOUGAL; ROBERT E. BURGESS; ARLENE T. CAMPSEN; TIMOTHY DARUK; MICHAEL E. DUNLOW; DONNA L. EASON; GEORGE OVERSTREET; JOHN BRINK;

No. 00-1219

DAVE ALTMAN; DARYL WARE; JAMES
EDWARDS; ROGER WARREN; DAVID
HUFF; CRAIG CARMEN; JOYCE SUTTON;
LEON COLEMAN; DAVID LIBENGOOD;
BOBBY BASS,

*Defendants,*

LESLIE LILLEY,

*Movant.*

MOM'S, INCORPORATED; JOHN ROBERT
COLAPRETE; EDY MILLER;
_____, a minor who sues by
Edy Miller, her parent and next
friend; _____, a minor who
sues by Edy Miller, his parent and
next friend; RICHARD SCOTT MILLER,

*Plaintiffs-Appellees,*

and

THEODORE MAZUR BONK,

*Plaintiff,*

v.

CAROL E. WILLMAN, individually and
as Special Agent for the Internal
Revenue Service,

*Defendant-Appellant,*

and

CHERYL L. KAST, individually and as
Group Manager for the Internal
Revenue Service; JUDITH WEBER;
CLYDE SANTANA; BOB DUNFORD;

No. 00-1294

CITY OF VIRGINIA BEACH; CITY OF
NORFOLK; UNKNOWN FEDERAL
AGENTS; UNKNOWN STATE AGENTS;
UNKNOWN CITY OF VIRGINIA BEACH
AGENTS; UNKNOWN CITY OF NORFOLK
AGENTS; UNITED STATES OF AMERICA;
JOHN C. MCDOUGAL; ROBERT E.
BURGESS; ARLENE T. CAMPSEN;
TIMOTHY DARUK; MICHAEL E.
DUNLOW; DONNA L. EASON; GEORGE
OVERSTREET; JOHN BRINK; DAVE
ALTMAN; DARYL WARE; JAMES
EDWARDS; ROGER WARREN; DAVID
HUFF; CRAIG CARMEN; JOYCE SUTTON;
LEON COLEMAN; DAVID LIBENGOOD;
BOBBY BASS,

                                   *Defendants,*

LESLIE LILLEY,

                                   *Movant.*

Appeals from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Robert G. Doumar, Senior District Judge.
(CA-96-246-2)

Argued: April 3, 2001

Decided: September 29, 2004

Before WILKINS, Chief Judge, and WIDENER and
LUTTIG, Circuit Judges.

Reversed by unpublished per curiam opinion.

**COUNSEL**

**ARGUED:** Jonathan Samuel Cohen, Tax Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; John Patrick Griffin, Senior Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL, Richmond, Virginia, for Appellants. Robert John Haddad, SHUTTLEWORTH, RULOFF, GIORDANO & SWAIN, P.C., Virginia Beach, Virginia, for Appellees. **ON BRIEF:** Paula M. Junghans, Acting Assistant Attorney General, A. Wray Muoio, Tax Division, Helen F. Fahey, United States Attorney, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant Willman. Mark L. Earley, Attorney General, OFFICE OF THE ATTORNEY GENERAL, Richmond, Virginia, for Appellants ABC Agents. James C. Breeden, HUBBARD, BREEDEN & TERRY, Irvington, Virginia, for Appellees.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

**OPINION**

PER CURIAM:

Carol Willman, an agent of the Internal Revenue Service (IRS), and Bob Dunford, an agent of the Virginia Department of Alcoholic Beverage Control (ABC), appeal a decision of the district court denying their motions for summary judgment on grounds of qualified immunity. For the reasons stated below, we reverse.

I.

A thorough recitation of the facts appears in the opinion of the district court. *See Mom's, Inc. v. Weber (Mom's)*, 82 F. Supp. 2d 493, 497-526 (E.D. Va. 2000). In presenting these facts, the district court construed the evidence in the light most favorable to the plaintiffs. *See Figgie Int'l, Inc. v. Destileria Serralles, Inc.*, 190 F.3d 252, 255

(4th Cir. 1999) (noting that, on summary judgment, court must construe evidence in light most favorable to non-moving party).

We will describe here only those facts relevant to resolution of the issues presented on appeal. Further, in this interlocutory appeal from the denial of summary judgment on grounds of qualified immunity, we may not examine the record to assess the evidence supporting the factual recitations in the district court opinion. *See Gray-Hopkins v. Prince George's County*, 309 F.3d 224, 229 (4th Cir. 2002).

## A. *Procedural History*

In 1996, Mom's, Inc. (Mom's), John Colaprete, Theodore Bonk, Richard Scott Miller, Edy Miller, and the Millers' children (collectively, "Plaintiffs") brought suit against some two dozen IRS and ABC agents (collectively, "Defendants"). Plaintiffs alleged that Defendants violated various of their constitutional and common law rights in obtaining and executing search warrants at Plaintiffs' homes and businesses on April 2, 1994. Plaintiffs sought $20 million in compensatory and exemplary damages.

Before issuing its *Mom's* opinion, the district court dismissed several claims and all except five Defendants. In *Mom's*, the court granted summary judgment to three additional Defendants. *See Mom's*, 82 F. Supp. 2d at 545. The court also granted summary judgment to Willman and Dunford (collectively, "Appellants") on all of Plaintiffs' claims except (a) that Appellants obtained a search warrant that was not supported by probable cause and (b) that Appellants stole a watch from Colaprete's safe; as to these claims, the court concluded that the record contained material disputes of fact and that Appellants were not entitled to qualified immunity. *See id.* at 538, 542, 543-44.

## B. *Facts*

At the time of the events giving rise to this suit, Mom's was a Virginia corporation operating a restaurant in Virginia Beach called "The Jewish Mother." The principal shareholders of Mom's—Colaprete and Bonk—also operated a Jewish Mother restaurant in Norfolk. The Virginia Beach restaurant had a valid license to serve alcoholic bever-

ages, but the Norfolk restaurant did not, although Colaprete and Bonk were unaware of this.

By late March 1994, ABC and the IRS were engaged in a joint investigation into whether Mom's and its principals were violating state and federal laws relating to the sale of alcohol and associated tax obligations. A key source of information in this investigation was Deborah Shofner, the former bookkeeper for The Jewish Mother. Shofner told investigators that Mom's annually underreported more than one million dollars in income; that she had been instructed to maintain two sets of books, with one containing inaccurate figures to be reported in tax filings; and that she had seen more than 100 kilograms of cocaine stored at the Virginia Beach restaurant. In support of the allegation that Mom's was underreporting its income, Shofner produced a set of documents, including cash register receipts and handwritten records; Shofner claimed that the handwritten documents recorded charges that were not entered into the cash register. An ABC accountant (Kelley) compared these documents with tax returns filed by Mom's and concluded that Mom's had not reported the income recorded in the handwritten documents. According to Kelley's analysis, Mom's underreported about $77,000 in a single 15-day period.

Based primarily on this information from Shofner, Willman obtained warrants to search the two Jewish Mother restaurants, the homes of Colaprete and the Millers, and a storage shed allegedly rented by Mom's. The warrants were executed by armed IRS and ABC agents, who seized computers, cash registers, numerous records, and a safe allegedly containing a gold watch belonging to Colaprete. Ultimately, all items except the watch were returned, and neither the United States nor the Commonwealth of Virginia ever brought criminal charges against Plaintiffs.

### C. *The Decision of the District Court*

After reviewing the summary judgment record, the district court determined that a reasonable jury could find that Appellants' conduct led to the acquisition and execution of a constitutionally defective search warrant and that one of the Appellants violated Colaprete's rights by stealing his watch. The court accordingly denied summary judgment.

1.

With respect to the search warrant, the court held that "the Fourth Amendment is violated when an officer intentionally or recklessly makes or causes to be made knowing omissions and misrepresentations in an affidavit supporting an application for a search warrant and thereby causes a search warrant to issue without probable cause." *Id.* at 528. According to the court, numerous such misrepresentations and omissions occurred here. For example, Willman exaggerated her qualifications, and she falsely claimed that both she and Kelley analyzed the documents provided by Shofner, when in fact only Kelley reviewed the documents. *See id.* at 521. Also, Dunford allegedly performed a flawed analysis of certain documents filed by Mom's, and the warrant application relied in part on this analysis. *See id.* at 509-10, 530.

Of particular significance to the district court was the fact that the warrant application relied extensively on information from Shofner (including Kelley's analysis of records provided by Shofner). The court acknowledged that Shofner was in a position to know about financial improprieties if they occurred at The Jewish Mother. *See id.* at 531. However, as the court further noted,

> Defendants had many reasons to doubt Shofner's veracity. Shofner's termination from The Jewish Mother, under questionable circumstances, raises the concern that she may have had a motive to fabricate allegations against Plaintiffs, either to retaliate against her former employer or to protect her own interests. Moreover, Defendants knew that Shofner was a convicted felon, and that she had been accused of embezzlement by Mom's owners. . . . Shofner not only failed to provide any tangible evidence to support her allegations, but actually presented evidence . . . that cast doubt upon her assertions. Furthermore, Shofner's allegations about the quantity of drugs at the Virginia Beach Jewish Mother were so extraordinary that they could not possibly have been believed by reasonable law enforcement officers, and in fact, were not believed by almost all who were associated with the investigation. . . . Surely, a witness who could make up stories about one hundred kilos of cocaine, worth several

million, could easily fabricate a story about a double set of financial records. Moreover, since Shofner was a first-time informant, Willman had no independent basis for believing her. . . . Lastly, it is virtually impossible to skim and launder money at the same restaurant at the same time, as Shofner claimed was occurring at The Jewish Mother.

*Id.* Much of this information was omitted from the warrant application or mentioned obliquely. *See id.* at 536-37.

The court concluded that a jury considering these circumstances could find that "Willman knew or reasonably should have known that she was making material misrepresentations and omissions in the affidavit" and that, absent these defects, the warrant would not have issued. *Id.* at 537-38. As to Dunford, the court determined that a jury could find that he "intentionally supplied exaggerated and misleading information to Willman for the purpose of obtaining a search warrant." *Id.* at 542.

2.

With respect to the watch allegedly stolen from Colaprete's safe, the court held that "the deprivation of property without due process of law during the execution of a search warrant could violate the Fourth, Fifth, and Fourteenth Amendments." *Id.* at 543. The court further ruled that this right was clearly established at the time of the searches giving rise to this lawsuit. *See id.*

After reviewing the evidence, the court determined that Willman and Dunford were the only two Defendants who had access to Colaprete's safe after it was opened. *See id.* at 543-44. Accordingly, the court concluded that neither Willman nor Dunford was entitled to summary judgment, as either of them could have taken Colaprete's watch. *See id.*

II.

The doctrine of qualified immunity shields government officials from liability for conduct that "does not violate clearly established

statutory or constitutional rights of which a reasonable person would have known." *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (internal quotation marks omitted). "A court evaluating a claim of qualified immunity must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Id.* (internal quotation marks omitted).

### A.   *Plaintiffs' Illegal Search Claim*

We initially consider Plaintiffs' Fourth Amendment claim arising from the allegedly defective search warrant application. We hold that the district court erred in denying summary judgment to Willman and Dunford.

In determining whether a law enforcement officer should be held liable for knowingly or recklessly making false statements or material omissions in a warrant application, "we apply the qualified immunity analysis, which examines the objective reasonableness of [the] officer's conduct." *Smith v. Reddy*, 101 F.3d 351, 355 (4th Cir. 1996). This standard "accommodates the allegation of falsity because a reasonable officer cannot believe a warrant is supported by probable cause if the magistrate is misled by statements that the officer knows or should know are false." *Id.* It bears emphasis, moreover, that the pertinent question is not "whether probable cause was, in fact, present," but rather "whether the officer could have reasonably thought there was probable cause to seek the warrant." *Id.* at 356.

We conclude that the probable cause determination made by Willman was reasonable. To be sure, Kelley's analysis of the documents provided by Shofner tended to establish that Mom's was substantially underreporting its income. The district court ruled, however, that it was unreasonable for Willman to rely on Kelley's analysis. We disagree.

The district court determined that Shofner was so patently unreliable that it was unreasonable for Willman to rely on the documents Shofner provided (which were the source for Kelley's analysis). It is true, as noted above, that Willman and her fellow investigators were aware of numerous circumstances tending to undermine Shofner's

credibility. On the other hand, Shofner enhanced her credibility by inculpating herself in some of the unlawful activities she accused Mom's and its principals of conducting. In particular, Shofner said that she maintained two sets of books—one that recorded all of Mom's income and one that recorded only a portion of that income, with the latter to be used for tax purposes. *See Mom's*, 82 F. Supp. 2d at 510. The district court determined that such statements by Shofner were not self-incriminating because she never actually prepared or filed any inaccurate tax returns. *See id.* at 532. But assisting the preparation of false records for the purpose of evading taxes is itself a crime. *See* 26 U.S.C.A. § 7206(2) (West 2002); *see also United States v. Johnson*, 319 U.S. 503, 518 (1943) (discussing aider and abettor liability in tax evasion cases). Moreover, as the district court recognized, the fact that an informant's statements are against her penal interest significantly strengthens the informant's credibility. *See United States v. Patterson*, 150 F.3d 382, 386 (4th Cir. 1998).

The district court further opined that, regardless of whether Shofner herself was credible, the conclusions reached by Kelley (based on Shofner's documents) were implausible. *See Mom's*, 82 F. Supp. 2d at 534-35. The court did not cite any evidence to support this, however, and neither have Plaintiffs done so. In the absence of evidence that Kelley's figures were inherently unbelievable, and that a reasonable investigator should have been aware of this, Plaintiffs cannot use the allegedly extraordinary nature of these figures to show that it was unreasonable for Willman to rely on Kelley's analysis. We therefore hold that an investigator in Willman's position could reasonably have determined that Shofner, the documents she provided, and the analysis of those documents by Kelley were sufficiently credible to establish probable cause. It follows that the district court erred in denying Willman's motion for summary judgment with respect to Plaintiffs' illegal search claim.

Furthermore, the reasonableness of *Willman*'s conduct severs the causal connection between *Dunford*'s allegedly improper conduct and the acquisition of the search warrants at issue here. The district court opinion leaves no question that Dunford was the driving force behind much of the investigation of the Jewish Mother restaurants. *See, e.g.*, *id.* at 509 (noting that Dunford began investigating the Virginia Beach Jewish Mother even before he was advised of the licensing problem

affecting the Norfolk Jewish Mother). Nevertheless, the district court correctly noted that Dunford cannot be held liable based on any "possible malice [or] motivation," *id.* at 541; instead, the court concluded that summary judgment was inappropriate because "[a] jury could conclude that Dunford intentionally supplied exaggerated and misleading information to Willman for the purpose of obtaining a search warrant," *id.* at 542. However, in light of the other material that was before Willman when she sought the warrants, it would be mere speculation to conclude that the defective information provided by Dunford caused Willman to seek the warrants. Because there is no evidence indicating that Dunford in any way induced Willman to seek a warrant without probable cause, Dunford was entitled to qualified immunity on the illegal search claim.

### B. *Colaprete's Stolen Watch Claim*

We next consider Colaprete's claim that Appellants violated his Fourth, Fifth, and Fourteenth Amendment rights when they failed to return a watch that he kept inside a safe that was seized from his home. We hold that the theft of Colaprete's watch violated his Fourth Amendment rights but that those rights were not clearly established when the theft allegedly occurred.

We note at the outset that no Fifth or Fourteenth Amendment due process claim will lie here because adequate mechanisms exist for Colaprete to recover the value of his watch. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984) ("[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available."). As for the Fifth Amendment Takings Clause, such claims ordinarily are not ripe until the government has denied compensation. *See Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 194-95 (1985). In any event, Colaprete does not argue that the alleged theft constituted a taking, let alone that the applicability of the Takings Clause in this situation is clearly established.

The Fourth Amendment, however, does protect against conduct of this nature. A seizure of property within the meaning of the Fourth

Amendment occurs "when there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). The Fourth Amendment regulates all such interference, and not merely the initial acquisition of possession. *See United States v. Place*, 462 U.S. 696, 706, 709-10 (1983) (holding that the initial seizure of a suitcase was valid but that the ninety-minute detention of the suitcase violated the Fourth Amendment). Because theft by a police officer extends a seizure beyond its lawful duration, such theft violates the Fourth Amendment. *See Nelson v. Streeter*, 16 F.3d 145, 151 (7th Cir. 1994).

The remaining question is whether Colaprete's Fourth Amendment right against having his property converted following a search was clearly established when the alleged conversion occurred. The Seventh Circuit has held that the existence of this right is "[s]o obvious . . . that we do not think the absence of case law can establish a defense of immunity." *Id.* We respectfully disagree. This court has never applied the Fourth Amendment in this manner, and Supreme Court precedent tilts slightly against the existence of any constitutional right against theft during the course of a search. *See Hudson*, 468 U.S. at 533 (holding that theft by prison guards does not violate due process when post-deprivation remedy exists).* Moreover, the Sixth Circuit has held that the Fourth Amendment does not apply in this context, at least when the search preceding the theft was lawful. *See Wagner v. Higgins*, 754 F.2d 186, 190 (6th Cir. 1985).

"[Q]ualified immunity exists to protect those officers who reasonably believe that their actions do not violate federal law." *Doe v. Broderick*, 225 F.3d 440, 453 (4th Cir. 2000). If either Appellant stole Colaprete's watch, he or she should have recognized that this was a tort, a crime, and even a sin, but he had no clear notice that this action

---

*Contrary to Willman's arguments, Justice O'Connor's concurrence in *Hudson* does not state that the Fourth Amendment has no application here. Justice O'Connor wrote that the Fourth Amendment governs the seizure and continuing detention of property but not the handling of seized property while it is lawfully in government custody. *See Hudson*, 468 U.S. at 538-39 (O'Connor, J., concurring). Conversion of seized property, however, renders the continuing detention unlawful. Moreover, Colaprete alleges that even the initial seizure here was unlawful.

violated the United States Constitution. Accordingly, the district court erred in denying summary judgment on grounds of qualified immunity.

## III.

For the reasons stated above, we reverse the denial of summary judgment.

*REVERSED*