James CERRA, Plaintiff,

v.

Wetzel HARVEY, Plan Administrator,
et al., Defendants.

No. CIV.A. 2:02–0915.

United States District Court,
S.D. West Virginia,
Charleston Division.

Sept. 2, 2003.

Michael D. Foster, Charles M. Surber, Jr., Jessica Rae Alsop, Jackson & Kelly, Charleston, WV, for Plaintiff.

Lawrence B. Lowry, James P. McHugh, Barrett, Chafin, Lowry, Amos & McHugh, Huntington, WV, for Defendants.

### MEMORANDUM OPINION AND ORDER

HADEN, District Judge.

Pending are the parties' cross-motions for summary judgment on all issues. The Court **GRANTS** Plaintiff's motion for summary judgment on his claim the Defendants wrongfully denied his pension benefits and **DENIES** Defendants' motion for summary judgment on their Counterclaim. Plaintiff's motion for fees and costs is **GRANTED.**

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff James Cerra (Cerra) served as a Trustee on the Board of Trustees (the Board) for Defendants West Virginia Laborers Pension Trust Fund (Pension Fund) and West Virginia Laborers Trust Fund (Welfare Fund) from 1970 to 1980.[1] On July 18, 1980 at the meeting of the Board, Cerra was hired as Administrator of the Funds, effective August 1. The Administrator served at the will and pleasure of the Board, performed day-to-day administrative duties on behalf of the Board and supervised the Board's other employees.

The Minutes of the July 18 meeting provided Cerra was to be paid fifteen thousand dollars ($15,000.00) per year, with seven thousand five hundred ($7500.00) to be paid by the Pension Fund and "it was the understanding of the Trustees that Mr. Cerra shall spend less than (20) twenty hours per week on the job." A committee report also dated July 18, 1980, attached to the Pension Fund Minutes reiterated the understanding that Cerra shall spend less than twenty hours per week on the job "and that if he should determine that more time is required, he shall notify the Board of Trustees immediately."

No such notice was ever given the Board. Nevertheless, it is undisputed that between 1980 and 1993 Cerra reported working either 160 or 200 hours per month, according to the West Virginia Laborers Benefit Funds' records.[2] The same records show contributions made for pension benefits from 1986 through April

---

1. Members of the single Board of Trustees served as Trustees for both Funds.

2. The only exceptions are a few months in 1980 and 1981. The least monthly hours

2000, although no contributions were made for a period from 1993 to 1997.

By 2000 Cerra was being paid eighty thousand dollars ($80,000.00) a year, twenty thousand ($20,000.00) paid by the Pension Fund, twenty thousand ($20,000.00) by the Welfare Fund, and forty thousand dollars ($40,000.00) by the Combined Funds, an administrative entity set up by the Board to collect contributions from contractors and distribute them to the appropriate funds. On February 17, 2000 Cerra resigned as Administrator of the Pension Fund effective April 15, and submitted a pension application and certification.[3]

On April 1, 2000 the Trustees of the Pension Fund notified Cerra his application for pension benefits had been approved and enclosing a check for two thousand three hundred thirty-six dollars and seventeen cents ($2,336.17). At the Trustees' meeting on May 16, 2000, Cerra's pension was approved, as one on a list of retirees, for a "normal retirement benefit" in the amount of two thousand three hundred forty-nine dollars and seventeen cents ($2,349.17) per month commencing April 2000.

On November 14, 2001 at an Executive Session of the Pension and Trust Funds, Attorney Vince Trivelli reported he had looked into former Administrator Cerra's pension and provided a confidential report to the Trustees. On the attorney's recommendation, the Trustees voted to suspend Cerra's pension and hold it in escrow until further notice. The Board notified Cerra by letter on November 19 that it had

determined he did not meet the eligibility provisions of the Pension Fund and the Board therefore had suspended his pension benefits. Cerra was advised he could request a fair and full review of the decision by the Board of Trustees.

After an extension of time granted by the attorney for the Funds, on March 13, 2001 Cerra filed with the Trustees a Memorandum, Affidavits and Supporting Documents in Support of the Request of James Cerra for Reinstatement of Pension Benefits. No response or any consideration of Cerra's request for review by the Board was forthcoming. On July 3, 2002 Cerra brought this action for pension benefits under the Employees Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.*, seeking pension benefits and alleging the Trustees' breach of fiduciary duty in suspending and, effectively, terminating those benefits. In their Counterclaim, Defendants allege Cerra was not an "employee" or "participating employee" under the Pension or Welfare Plan definitions, but that Cerra processed his own application for pension benefits and awarded himself his $2,336.17 monthly benefit. The Counterclaim seeks return of pension benefits allegedly wrongfully paid, plus hospital and medical benefits paid from the Welfare Fund from 1997 to 2002. The parties' cross-motions for summary judgment on all issues pend.

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate if "there is no genuine issue as to any mate-

---

reported were 140 in November 1980 and February 1981. In a period from 7/92 to 10/93, Cerra's employer's name is given as Cerra Associates, Inc. on the same records. For the remainder from 1980 through 2000 his employer is given as either WV Laborers' Combined Fund or WV Laborers' Pension & Trust Funds.

**3.** Cerra initially provided an application indicating 30 years of service credit, including time as a Trustee, but then provided the application on which his pension was based, showing 20 years of service credit and total employer contributions of seventy-two thousand two hundred eighty-two dollars and ten cents ($72,282.10).

rial fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In deciding whether a genuine issue of material fact has been raised, all inferences are construed in favor of the nonmovant. *See Harleysville Mut. Ins. Co. v. Packer*, 60 F.3d 1116, 1119 (4th Cir.1995). "At bottom, the district court must determine whether the party opposing the motion for summary judgment has presented genuinely disputed facts which remain to be tried. If not, the district court may resolve the legal questions between the parties as a matter of law and enter judgment accordingly." *Thompson Everett, Inc. v. National Cable Adver., L.P.*, 57 F.3d 1317, 1323 (4th Cir. 1995). If factual issues remain, summary judgment is not appropriate and the questions must be put to a jury.

## B. Standard of Review

The standard of review for an ERISA plan denial of benefits was established by the United States Supreme Court: "[A] denial of benefits challenged under [ERISA] is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). If the plan's administrators have discretion, then an administrator's denial of benefits is reviewed using the abuse of discretion standard. *Boyd v. Trustees of United Mine Workers Health and Retirement Funds*, 873 F.2d 57, 59 (4th Cir.1989); *see also Booth v. Wal–Mart Stores, Inc. Assocs. Health and Welfare Plan*, 201 F.3d 335 (4th Cir. 2000)(abuse of discretion, not arbitrary and capricious is the appropriate standard). The most recent Pension Plan of the West Virginia Laborers Pension Trust Fund (the Plan) provides that "The Board shall have the power to determine the

eligibility of any Employee to participate in or receive benefits under this plan, ... to determine the interest of any Participant in the Trust Fund, ... and to interpret any provisions of this Plan." Plan, § 16.01(e). Neither party questions the Trustees' full discretionary power.

The fiduciary's "discretionary decision will not be disturbed if reasonable, even if the court itself would have reached a different conclusion." *Booth* at 341. In general, "a decision is reasonable if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Ellis v. Metropolitan Life Ins. Co.*, 126 F.3d 228, 233 (4th Cir.1997). Substantial evidence, it has been held, is:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir.1966).

Plaintiff contends the deferential abuse of discretion test is not appropriate in this situation because the Trustees never made a reasoned decision. No reasons were given for suspension of pension benefits except that Cerra was not eligible and no review was ever taken or decision made on Cerra's appeal of the suspension decision. In *Gritzer v. CBS, Inc.*, 275 F.3d 291 (3d Cir.2002), the court explained that deference to discretion is inappropriate when no discretion is exercised:

> Where a trustee fails to act or to exercise his or her discretion, de novo review is appropriate because the trustee has forfeited the privilege to apply his or her discretion; it is the trustee's analysis,

not his or her right to use discretion or a mere arbitrary denial, to which a court should defer. *Moench v. Robertson*, 62 F.3d 553, 567 (3d Cir.1995)(stating that de novo review was appropriate "because the record is devoid of any evidence that the Committee construed the plan at all. Thus, this is not a case implicating the arbitrary and capricious standard of review.... The deferential standard of review of a plan interpretation 'is appropriate only when the trust instrument allows the trustee to interpret the instrument *and when the trustee has in fact interpreted the instrument'* ") (quoting *Trustees of Central States, Southeast and Southwest Areas Health & Welfare Fund v. State Farm Mut. Auto. Ins.*, 17 F.3d 1081, 1083 (7th Cir.1994)).

*Id.*, 275 F.3d at 296 (collecting cases, *id.* at n. 5.). This analysis is supported further by consideration of the deferential standard, discussed above, under which "a decision is reasonable if it is the result of a deliberate, principled reasoning process ... supported by substantial evidence." In the absence of reasons or any indication of the reasoning process, there is nothing to which the Court may defer.

Defendants contend *Gritzer* is distinguishable because here the Trustees relied on their attorney's confidential memorandum that contained a thorough analysis of Cerra's eligibility, reasons reviewed by the Trustees in making their determination. The eleven page memorandum reviews Cerra's potential status as an employee under common law tests and under the Plan definitions. It also discusses his employment terms and hours and contribu-

tions to the Fund. The memo poses questions for discussion, e.g., "if Jim Cerra is a 'common-law' employee, does he meet the eligibility requirements of the Plan?" In the Conclusion, the memo posits "arguments can be made that [Cerra] was a common-law employee ... and that he was not a common-law employee." It also states "there is an argument that Jim Cerra is not eligible for a pension" under the Plan. In other words, the memorandum does not provide the Trustees' reasons and reasoning for denying Cerra's eligibility.[4] It provides questions and arguments on both sides of the issues. Even if one assumes the Trustees accepted only the arguments against Cerra's pension and rejected the arguments for it, any reasoning or reasons for that decision are still lacking. Moreover, the reasons, even if implicit in the confidential memorandum, were not communicated to Cerra.

The first explanation Cerra had of reasons for the Trustees' denial of his pension benefits was the allegations of the Counterclaim. "[P]ost-commencement-of-litigation determinations under the aegis of attorneys are not benefit eligibility analyses by a plan administrator to which a court must defer." *Gritzer*, 275 F.3d at 296 n. 4.

Additionally, both ERISA and the Plan itself require adequate notice in writing when a claim for benefits is denied, and an opportunity for a full and fair review. *See* 29 U.S.C. § 1133(1); 29 C.F.R. § 2560.503–1(f). As the Pension Plan Summary Plan Description[5] (SPD) explains, if a claim is denied or partly denied:

> The written denial will give: (1) specific reason(s) for denial, (2) a reference to the specific Plan provision(s) on which

---

**4.** Trustees Wetzel Harvey and Mary Jo Klempa both testified they have no recollection of the reasoning behind the Trustees' decision. (Klempa dep. 36; Harvey dep. 191.)

**5.** The Summary Plan Description is a booklet required by ERISA to be distributed to all

participants, "written in a manner calculated to be understood by the average plan participant" and provide the plan participants an "accurate and comprehensive" statement of their "rights and obligations under the plan." 29 U.S.C. § 1022(a)(1).

the denial is based, (3) a description of any additional material or information necessary to perfect the claim and the reason why such material or information is needed, and (4) an explanation of the Plan's claim review procedure.

(Pl.'s Mem. in Resp., Ex. 1, SPD at 12.) Following denial, a claimant has 90 days to request review, and a decision on the appeal will be made "not later than 60 days after receipt of your request for review" with a decision in writing, including "specific reasons" for the decision. *Id.* These regulations "are designed to afford the beneficiary an explanation of the denial of benefits that is adequate to ensure meaningful review of that denial." *Halpin v. W.W. Grainger, Inc.,* 962 F.2d 685, 689 (7th Cir.1992).

Having failed to follow any procedural requirements beyond notice (without explanation) in writing, the Trustees' decision is due no deference. For these reasons, the Court reviews the Trustees' suspension/denial of Cerra's pension benefits *de novo.*

■ Ordinarily such *de novo* review considers the record before the Trustees. *Quesinberry v. Life Ins. Co. of N. America,* 987 F.2d 1017, 1025 (4th Cir.1993). Additional evidence may be considered, but only when it is necessary to conduct an adequate *de novo* review. *Id.* In this case, the administrative record consists of the minutes of the November 14, 2001 Board of Trustees' meeting, the confidential memorandum prepared by counsel for the Trustees and discussed at that meeting, and the Memorandum, Affidavit, and Supporting Documents submitted by Cerra for review. Included in the appeals package is a list of materials Cerra requested the Board review. (*See* Compl., Ex. 3.)

■ Our Court of Appeals has emphasized "that the administration of benefit and pension plans should be the function of the designated fiduciaries, not the federal courts." *Bernstein v. CapitalCare, Inc.,* 70 F.3d 783, 788 (4th Cir.1995). However, that court also recognized in *Berry v. Ciba–Geigy Corp.,* 761 F.2d 1003 (4th Cir.1985) that in cases where the fiduciary committed clear error or acted in bad faith, "a reversal, rather than a remand, would be within the discretion of the district court." *Id.,* 761 F.2d at 1007 n. 3. The Trustees' failure to follow its Plan requirements, to provide any explanation of its decision, to process Cerra's appeal, or to respond to his request for review all evidence dereliction of duty, a form of bad faith. Because the fiduciary failed to review the extensive record or make any reasoned determination, this Court chooses to exercise its discretion and will decide the benefits question.

### C. Pension Plan Participant

■ To assert a claim under ERISA, the plaintiff must be either a "participant" or a "beneficiary" of an ERISA plan. *See* 29 U.S.C. § 1132(a)(1). Cerra claims pension benefits as a participant in the Funds' pension plan. A participant is defined as "any *employee* or former *employee* of an employer ... who is or may become *eligible* to receive a benefit of any type from" the ERISA plan. *Id.* § 1002(7)(emphasis added). Therefore, an individual is a "participant" in an ERISA plan if: (1) he is a common law employee of the employer maintaining the plan, *Nationwide Mut. Ins. Co. v. Darden,* 503 U.S. 318, 323–24, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992), and (2) he is, according to the language of the plan itself, eligible to receive a benefit under the plan. *Wolf v. Coca–Cola Co.,* 200 F.3d 1337, 1340 (11th Cir.2000)(citing *Clark v. E.I. Dupont De Nemours & Co., Inc.,* 1997 WL 6958, *2, 105 F.3d 646 (4th Cir.1997)(unpublished)).

### 1. Common law employee

■ In their Answer, the Trustees admitted Cerra's allegation, "Plaintiff Cerra

served as administrator of the Funds and as a full-time employee of the Funds until his retirement as administrator effective April 1, 2000." (Answer ¶ 8; *see* Compl. ¶ 8.) Notwithstanding this admission, in the Counterclaim the Trustees allege that "at no[ ] time during his tenure as Administrator of the Pension Plan and Welfare Plan was the Plaintiff Cerra an employee of the Plans." (Counterclaim ¶ 8.) Administrator Wetzel Harvey, longtime Trustee who was hired as administrator after Cerra's resignation, acknowledged he and all Trustees believed Cerra was the Board's full-time employee.

*Darden, supra,* provides this test for common law employee status:

In determining whether a hired party is an employee under the general common law of agency, we consider the hiring party's right to control the manner and means by which the product is accomplished. Among the other factors relevant to this inquiry are the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits and the tax treatment of the hired party.

*Darden,* 503 U.S. at 323–24, 112 S.Ct. 1344 (quoting *Community for Creative Non–Violence v. Reid,* 490 U.S. 730, 751–52, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989))(other citations omitted). The common-law test contains " 'no shorthand formula or magic phrase that can be applied to find the answer, ... all of the incidents of the relationship must be assessed and weighed with no one factor being decisive.' " [6] *Id.* at 324, 112 S.Ct. 1344 (quoting *NLRB v. United Ins. Co. of America,* 390 U.S. 254, 258, 88 S.Ct. 988, 19 L.Ed.2d 1083 (1968)).

Facts admitted in Defendants' Answer are helpful in this inquiry. Defendants admit Cerra served at the will and pleasure of the Trustees (Answer ¶ 11) and his duties to the Trustees were required to be performed by him individually. (*Id.* ¶ 10). Defendants admit that as Administrator Cerra was required to work with and direct and control the employees of the Funds (*id.* ¶ 19) and he hired and supervised those employees. (*Id.* ¶ 20.) Cerra was required to report regularly to the Trustees in connection with his services (*id.* ¶ 21), he was not paid by the Trustees on a per-project basis (*id.* ¶ 22), and he was entitled to reimbursement for his reasonable business and travel expenses (*id.* ¶ 23). The Trustees furnished Cerra all materials and supplies that were needed by him to perform his duties (*id.* ¶ 24) and he was not required to maintain a separate office or hire separate employees. (*Id.* ¶ 25.) The Trustees admit they reserved the right to "terminate Cerra's contract" at any time. (*Id.* ¶ 26.)

Cerra was a will and pleasure employee of the Board and the Trustees therefore

---

**6.** The confidential memorandum reviewed by the Board before suspending Cerra's pension listed twenty factors under Internal Revenue Service Ruling 87–41, a list similar to *Darden,* which is also cited, and then stated, "A quick review of these factors indicates that Jim Cerra has an argument that he is a common law employee. It is also the case that a number of factors could work against such a finding including the early location of the work, his tax treatment and the fact that he worked for more than one employer." (Pl.'s Mot. Summ. J., Ex. 13, 2.)

retained the right to control the manner and means of his work. The Trustees' admissions list numerous requirements they had for his work. The fact he was not directed by the Board in his day-to-day work is attributable to his executive position. While one indication of a master/servant relation is work that does not require the services of one highly educated or skilled, this is not determinative because, for example, "ship captains and managers of great corporations are normally superior servants, differing only in the dignity and importance of their positions from those working under them." Restatement (Second) of Agency § 220 cmt. a (1958).

The Trustees admit they supplied Cerra with whatever instrumentalities and tools were needed for his job. For the first six years of his employment, Cerra also maintained a separate office for Cerra Associates, however, starting in 1986 he was at the Funds' Board office during working hours and supervised the Board's other employees in their daily operations. Cerra's term as the Fund's Administrator lasted twenty (20) years, from 1980 through 2000. Because Cerra was an at-will employee, the Board retained complete discretion over when and how he worked, although there is no evidence they exercised that discretion. Cerra testified he worked at the Fund's office six to seven hours per day.[7] Cerra oversaw the day-to-day work of the Board's other employees, which was the regular business of the Board, and there is no dispute the Board of Trustees was in business. The Trustees allowed Cerra to participate in the Pension and Welfare Funds for twenty years, although they now dispute the legitimacy of their actions.

Cerra was paid by the month for twenty years, an indication he was an employee, not an independent contractor, paid by the job or the project. For the entire period, however, the administrator's fee was paid to Cerra Associates at Cerra's direction. No taxes were withheld by the Funds. The Trustees contend this arrangement demonstrates Cerra was actually Cerra Associates' employee. Who is an employee for tax purposes does not depend, however, on whether taxes are withheld. *See* 26 C.F.R. § 31.3401(c)–1(stating factors similar to the *Darden* test with emphasis on the employer's right to control employee). How the payment is characterized is also immaterial, whether as a salary, fee, or otherwise. *See id.* at 31.3401(a)–1(2). If Cerra was the Board's employee and was paid wages denominated a "fee," the Fund was required to withhold taxes and it was liable for the taxes, unless it can show the tax has been paid. *Id.* § 31.3402(d)–1; *see also* § 31.3403–1. This factor only, of the entire multi-factor test, potentially supports a finding Cerra was not the Trustees' employee.

The Trustees also note Cerra Associates received fees from Kanawha Valley Builders Association and Tri–State Contractors Association during the same period. Receiving income from other sources, though, does not preclude one being an employee.

Reviewing these factors, it is clear that for twenty years Cerra was an at-will employee of the Board of Trustees, acting as their administrator. The Court so **FINDS** and **CONCLUDES.**

### 2. Eligibility under the Plan

■ During the period 1980 to 2000, the Pension Plan[8] was amended at various

---

**7.** The Trustees cite a 1998 deposition Cerra gave as the Funds' administrator in which he testified he worked fifty percent of the time for the Mid Ohio Valley Association. In the

same deposition, Cerra also testified he worked twelve hours a day.

**8.** The Trustees cite definitions of "Employee" from various versions of the West Virginia

times in ways that are relevant to Cerra's eligibility for a pension. Each version, however, defines "Participant" as "an Employee or former Employee of an Employer who is or may become eligible to receive a benefit from this Plan." Also the definition states, "Once an Employee becomes a Participant, he shall remain a participant until his date of death or until he suffers Forfeited Service." [9] Every version of the Plan includes in the definition of "Employer" the Board of Trustees for its employees. Although the definition of "Employee" was amended, every version includes "full-time employees of the Board of Trustees" until 1998, when the Plan definition of "Employee" was amended to include instead "full-time employees of this Fund" and "full-time employees of the West Virginia Laborers Health and Welfare Fund." The term "Employer" continued to include the Board of Trustees. In 1996 for the first time the term "full-time" was defined as "an individual who works 1000 or more hours during the 12 month period measured from the individual date of hire, or any anniversary thereof."

According to the SPD, "To be eligible for Pension Benefit at Normal Retirement, a Participant must retire from covered employment on or after his Normal Retirement Age (i.e., the later of (i) age sixty-two (62) or (ii) the completion of [five (5)] [10] years of Participation in the Plan since his/her last Break–in–Service Date)." (Pl.'s Mem. in Resp., Ex. 1(SPD), 13–14.) Cerra was 65 when he retired.

The issue then is whether Cerra was a full-time employee of the Board making him an eligible participant under the Plan and, if so, when he became one. Defendants point out Cerra was hired as a part-time employee and never noticed the Board to alter that condition. Cerra testified that shortly after he took the job, it became apparent it was a full-time job and that was known to the Trustees, although it was never officially reflected in the Minutes. (Defs.' Mem. of Law in Support, Ex. (Cerra Dep.), 44.) Cerra's account is supported by affidavits from three former Trustees stating that, although he was originally intended to work 20 hours per week, he was a full-time administrator and continued full-time until his retirement. (Compl., Ex. 3, attachments, ¶ 6.) The Fund records also support Cerra's full-time status, showing, as noted above, no less than 147 hours per month, but generally 160 or 200 hours every month from August 1980 until retirement in 2000. (See Pl.'s Mem. in Resp., Ex. 6; Cerra Dep., Ex. 6.) The same records show contributions, based on the hours reported, made by either the Pension Trust Fund or the Combined Funds to the Pension Trust Fund for Cerra during the same time period.[11] Finally, Defendants' Counterclaim asserts: "[E]ven *though Cerra was engaged as a full-time Administrator* for the Plans he was not required to be present in the Plan's offices on a daily basis[.]" (Counterclaim ¶ 6 (emphasis added).) Although Wetzel Harvey testified that Cerra

Laborers' Trust Fund Agreement and Declaration of Trust. That document creates the trusts and is not the Pension Plan under which Cerra and other employees' eligibility is determined. The Court relies on the Pension Plan definitions.

9. "Forfeited Service" is not a defined term in the Plan.

10. Five years of Participation is required for employees of "this Fund" or of the West Vir-

ginia Laborers' Health and Welfare Trust Fund. *Id.*

11. Pension fund payments for the fiscal years March 31, 1993 and March 31, 1994 were contributed by Cerra Associates, a practice questioned by the Board's auditor in a review prepared at the request of the Board's counsel and submitted to them October 4, 2001. (Cerra Dep., Ex. 6.)

was never a full-time employee, despite being paid $80,000 per year, (Harvey dep. at 74, 75, 91), he also testified that he, Harvey, was hired as administrator on the same basis as Cerra, and Harvey was full time and paid $80,000. (Harvey dep. at 132, 137.) The evidence is overwhelming and uncontroverted, except by the equivocal testimony of Wetzel Harvey, that Cerra was a full-time employee of the Trustees for almost twenty years. Based both on his age and years of covered service, Cerra was eligible to participate in the Pension Plan. The Court so **FINDS** and **CONCLUDES**.

For these reasons, Cerra's motion for summary judgment on his claim for benefits under ERISA is **GRANTED** and the Trustees' ineffective denial of benefits is **REVERSED**.[12]

### D. Defendants' Counterclaim

Defendants' Counterclaim seeks return of pension benefits paid to Cerra because allegedly he was not eligible. Because he was eligible, Defendants' motion for summary judgment on that claim is **DENIED**. In addition, Defendants allege Cerra received payment for hospital and medical bills he incurred from 1997 to 2002 from the Welfare Plan, although he was not eligible for such payment. No facts or law have been put forward in support of this claim. Having sought summary judgment on their claims, Defendants have waived this issue and the Court **DENIES** summary judgment on it as moot.

### E. Attorney Fee and Costs

 The Fourth Circuit adopted a five factor test to guide district courts' exercise of discretion in awarding attorney fees under ERISA. The five factors are:

(1) degree of opposing parties' culpability or bad faith;

(2) ability of opposing parties to satisfy an award of attorneys' fees;

(3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances;

(4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and

(5) the relative merits of the parties' positions.

*Quesinberry*, 987 F.2d at 1029 (citing *Reinking v. Philadelphia Am. Life Ins. Co.*, 910 F.2d 1210, 1217–18 (4th Cir.1990))(other citation omitted). The test is not a rigid one, but rather provides "general guidelines" in determining whether to grant a request for attorney fees. *Id.* (citing *Gray v. New England Tel. & Tel. Co.*, 792 F.2d 251, 258 (1st Cir.1986)).

 Defendants failed to provide a reasoned opinion or rationale to Cerra when his pension benefit was suspended. On appeal of that decision, the Trustees took no action. Both are procedural requirements of ERISA, but more importantly both actions provide a basis for participants to enforce benefit rights under an ERISA plan. Failure to take these actions

---

**12.** Cerra's claims on alternative bases for benefits, equitable estoppel and breach of contract, are **DENIED** as moot.

Whether the amount of pension Cerra now receives was correctly calculated is not an issue before the Court, although a subject of discussion in memoranda, depositions and other evidence presented in this case. The Court notes the Pension Plan contemplates recalculation of an overpaid benefit. SPD at 32 ("What Happens If My Benefit Is Overpaid?"). The Court **REMANDS** the action to the Trustees solely for determination of the correct pension benefit due Cerra based on Employer payments to the Pension Fund.

demonstrates bad faith by the Board of Trustees. The award of fees and costs should have a deterrent effect on this Board, emphasizing its responsibilities under ERISA, and on others, recognizing there are consequences to the failure to act. The issues weighed strongly in favor of Cerra's position as a long-term employee who participated in the pension benefit plan and against the Board's unsupported denial of those benefits. The Defendant Trustees are well able to pay the attorney fees and costs associated with this action.

The only factor that does not support such an award is the individualized nature of Cerra's case: the Board's inaction was directed only at Cerra and raised no general issues of law. However, *Quesinberry* notes, "No one of these factors is necessarily decisive, and some may not be apropos in a given case, but together they [form] the nuclei of concerns that a court should address[.]" *Id.* (quoting *Iron Workers Local # 272 v. Bowen,* 624 F.2d 1255, 1266 (5th Cir.1980)). The Court **GRANTS** Cerra's motion for fees and costs associated with this action. Counsel should provide an affidavit in support of proposed award by **Tuesday, September 16, 2003.** Defendants may respond by **September 30.**

### III. CONCLUSION

Plaintiff's motion for summary judgment is **GRANTED** and the Trustees' ineffective denial of benefits is reversed. Defendants' motion for summary judgment is **DENIED.** This action is **REMANDED** to the Trustees solely for determination of Cerra's correct pension benefit, and this action is **DISMISSED** and **STRICKEN** from the Court's docket. The Court retains jurisdiction solely for final determination of Plaintiff's petition for attorney fees and costs.

The Clerk is directed to send a copy of this Memorandum Opinion and Order to counsel of record. The Order is posted on the Court's website at http://www.wvsd.uscourts.gov.

### *JUDGMENT ORDER*

In accordance with the Memorandum Opinion and Order entered this day, the Court **GRANTS** judgment in favor of Plaintiff and **ORDERS** the case be **DISMISSED** with prejudice and **STRICKEN** from the docket.

The Clerk is directed to send a copy of this Judgment Order to counsel of record.