Karen JOHNSON, Personal Representative of the Estate of Lindsay Gillespie, Plaintiff,

v.

NEW RIVER SCENIC WHITEWATER TOURS, INC., a West Virginia Corporation, and Clayton Scott, Defendants.

No. CIV.A. 5:01–0703.

United States District Court, S.D. West Virginia, Beckley Division.

April 13, 2004.

David L. White, Richard A. Monahan, Masters & Taylor, Charleston, WV, Ken W. Harrell, Angus M. Lawton, Joye Law Firm, North Charleston, SC, for Plaintiffs.

Daniel R. Schuda, Schuda & Associates, Charleston, WV, for Defendants.

### ORDER

CHAMBERS, District Judge.

Pending are Third Party Defendants Fort Johnson Baptist Church and John Peters' motion for summary judgment and Plaintiff's motion *in limine* regarding a purported release of liability and comparative negligence. For the reasons set forth herein, both motions are **GRANTED**.

### I. Introduction

On August 13, 1999, fourteen-year old Lindsay Gillespie ("Lindsay") died while participating in a rafting trip on the New River that was led by Defendant New River Scenic Whitewater Tours, Inc. and its employee, Defendant Clayton Scott (collectively, "New River Scenic"). Lindsay's mother, Plaintiff Karen Johnson ("Ms. Johnson"),[1] filed this suit against New River Scenic and Scott, alleging that their conduct was the proximate cause of Lindsay's death. New River Scenic subsequently filed a third party complaint against Fort Johnson Baptist Church ("Fort Johnson") and its alleged employee, John Peters ("Peters"), asserting that they were contractually obligated to indemnify New River Scenic based on two documents signed by Peters the morning of the trip that contain language of both release of liability and indemnification. Fort Johnson and Peters now move for summary judgment against New River Scenic and Scott. Ms. Johnson seeks an order precluding any party from referencing these documents at trial.[2]

### II. Factual Background

The Fort Johnson Baptist Church is located in Charleston, South Carolina. In August 1999, the church sponsored a youth trip to Charleston, West Virginia, for the

---

1. The Court refers to Plaintiff as "Ms. Johnson" in order to avoid confusion regarding whether it is referring to Plaintiff Karen Johnson or Third Party Defendant Fort Johnson Baptist Church.

2. Plaintiff's motion also seeks preclusion of reference to any act of "comparative negligence" at trial. At the Pretrial Conference, counsel for New River Scenic conceded that, so long as the Court would instruct the jury that it could be held liable only for conduct falling beneath the standard of care articulated by West Virginia statutes, "comparative negligence" would be irrelevant. Thus, while the Court grants Plaintiff's motion in its entirety, this Order addresses only that aspect of it pertaining to the purported release of liability and indemnification.

purpose of performing mission work. The trip culminated in a whitewater rafting excursion on the New River. Peters, Fort Johnson's Associate Pastor for Youth and Education, handled most of the arrangements for the whitewater event on the church's behalf. Prior to the start of the trip, Fort Johnson required the youth participants to obtain "permission slips" from their parents or guardians. While Ms. Johnson remembers executing one to facilitate Lindsay's participation in the mission trip, Lindsay apparently lost the form before turning it in to Peters. Nonetheless, Ms. Johnson recalls giving a secretary of Fort Johnson verbal authorization for her daughter to travel with the group on the morning the trip began.

On August 13, before the whitewater trip commenced, Peters signed two documents after being instructed to do so by employees of New River Scenic.[3] The first ("the indemnity agreement"), labeled "WAIVER AND RELEASE OF LIABILITY INDEMNIFICATION AGREEMENT," states in pertinent part:

> In consideration for *Lindsay Gillespie* (Print Name) ("minor") being permitted by NEW RIVER SCENIC WHITEWATER TOURS to participate in its recreational events and activities, I agree to this WAIVER, RELEASE AND INDEMNIFICATION; the undersigned parent and/or guardian of the minor, for themselves and on behalf of the minor, join in the foregoing WAIVER AND RELEASE and stipulates and agrees to SAVE AND HOLD HARMLESS, INDEMNIFY, AND FOREVER DEFEND NEW RIVER SCENIC WHITEWATER TOURS from and against any claims, actions, demands, expenses, liabilities (including reasonable attorneys' fees) and NEGLIGENCE made or brought by the minor or by anyone on behalf of the minor, as a result of the minor's participation in NEW RIVER SCENIC WHITEWATER TOURS sponsored recreational events and activities and the use of the facilities of NEW RIVER SCENIC WHITEWATER TOURS.

At the bottom of the form and above a line designated for "Signature of Parent or Guardian of Minor" appears the signature "John A. Peters." The second form ("the release of liability") that Peters signed is labeled, "WAIVER AND RELEASE OF LIABILITY." In pertinent part, it states:

> I understand this rafting trip, which has been arranged by NEW RIVER SCENIC WHITEWATER TOURS, INC., is a participation sport which involves certain hazards and risks. The risks and hazards involved may include, but are not limited to, traveling in rough waters in a rubber raft, having medical emergencies in remote areas, unexpected weather conditions, as well as risks involved in transportation by cars, buses, and other vehicles.

> By signing this form, I indicate I am aware of the above dangers and that, furthermore, I release NEW RIVER SCENIC WHITEWATER TOURS, INC. from liability, claims, debts, and actions of all kinds both now and in the future, as a result of my participation in this trip. It will also serve as a release for my heirs, executors, administrators, and any minors accompanying me (Par-

---

3. Fort Johnson has submitted deposition testimony of Richard Smith, New River Scenic's owner, in which Smith states that trip leaders (like Peters) were required to sign the forms before the group was allowed on the river. New River Scenic has submitted interrogatory responses from Fort Johnson that state that Peters signed the documents because he was "requested to do so" by representatives of New River Scenic.

ents or Guardian must sign for all person under age 18).

\* \* \* \* \* \*

I hereby assume all risks and dangers and all responsibility for any losses and/or damages, whether caused in whole or in part by the negligence or other conduct of the owners, agents, officers, or employees of NEW RIVER SCENIC WHITEWATER TOURS, INC., or by any other person.

I, on behalf of myself, my personal representatives and my heirs hereby voluntarily agree to release, waive, discharge, hold harmless, defend and indemnify NEW RIVER SCENIC WHITEWATER TOURS, Inc. and its owners, agents officers and employees from any and all claims, actions, or losses for bodily injury, property, damage, wrongful death, loss of services or otherwise which may arise out of my use of NEW RIVER SCENIC WHITEWATER TOURS, INC. equipment or my participation in Outfitter Guide Services activities. I specifically understand that I am releasing, discharging and waiving any claims or actions that I may have presently or in the future for the negligent acts or other conduct by the owners, agents or employees of NEW RIVER SCENIC WHITEWATER TOURS, INC.

At the bottom of the form, a line marked "Name Address City State Zip Age" is completed, in printed handwriting, with the name "Lindsay G." and the remaining requested information. Below that, the signature of John A. Peters appears above a line marked "Signature (Parents and Guardians must sign for all persons under age 18.)."

Ms. Johnson alleges that during the trip, the raft in which Lindsay was riding (which was piloted by Scott) flipped over; Lindsay was pinned against a rock beneath the water and drowned before she could be rescued. In response to the suit filed by Ms. Johnson, New River Scenic filed a third party complaint against Fort Johnson and Peters, alleging that the two documents the latter signed operate as indemnity agreements, requiring the third-party defendants to pay any damages for which New River Scenic or Scott may be held liable. Fort Johnson and Peters have now moved for summary judgment, arguing that (a) such agreements are void as against public policy; (b) Peters signed the form on behalf of Lindsay and her mother, not himself or the church; and (c) the contract was void for lack of consideration; New River Scenic responds that a genuine issue of material fact precludes summary judgment. In a motion that raises closely related issues, Ms. Johnson argues that because the documents are unenforceable either (a) as contrary to West Virginia public policy or (b) because Peters had neither express nor implied authorization to sign them on her behalf, New River Scenic should not be permitted to introduce evidence concerning these documents at trial.

## III. Discussion

### A. Jurisdiction[4]

■ Ms. Johnson's complaint invoked this Court's jurisdiction pursuant to 28 U.S.C. § 1332, alleging that the citizenship of the parties is diverse and that the amount in controversy exceeds $75,000. At the time the complaint was filed, Ms. Johnson was a resident of South Carolina, as was Lindsay at the time of her death. New River Scenic is a West Virginia corporation and Scott is a resident of West

---

**4.** Although no party questions this Court's subject matter jurisdiction over the instant controversy, it is an issue that this Court has a duty to *sua sponte* examine. *See Cook v. Georgetown Steel Corp.*, 770 F.2d 1272, 1274 (4th Cir.1985).

Virginia. Thus, the controversy as stated in the complaint clearly satisfies the "total diversity" requirement. *See Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806). However, New River Scenic named as a third-party defendant Fort Johnson and Peters, both of whom are residents of South Carolina for jurisdictional purposes. Thus, the plaintiff and the third-party defendants are residents of the same state. The Supreme Court has held, though, that the jurisdictional inquiry must focus on each individual claim-in other words, this Court must examine whether it has jurisdiction over the claim by Ms. Johnson against New River Scenic separately from whether it has jurisdiction over the claim by New River Scenic against Fort Johnson. *See Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 67 n. 1, 117 S.Ct. 467, 136 L.Ed.2d 437 (1996) ("Thus, assuming that jurisdiction is based upon diversity of citizenship between [plaintiff] and [defendant], the question concerning impleader is whether there is a jurisdictional basis for the claim by [defendant] against [third-party defendant]. The fact that [plaintiff] and [third-party defendant] may be co-citizens is completely irrelevant. Unless [plaintiff] chooses to amend his complaint to assert a claim against [third-party defendant], [plaintiff] and [third-party defendant] are simply not adverse, and there need be no basis of jurisdiction between them."); *see also Wichita R.R. & Light Co. v. Pub. Utils. Comm'n*, 260 U.S. 48, 54, 43 S.Ct. 51, 67 L.Ed. 124 (1922) (diversity jurisdiction is unaffected by the subsequent intervention "of a party whose presence is not essential to a decision of the controversy between the original par-

ties"). Therefore, because total diversity exists on both sides of each dispute in this case, the Court is satisfied that it has subject matter jurisdiction.

### B. Summary Judgment Standard

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Fed.R.Civ.P.* 56(c). If the moving party satisfies its initial burden of demonstrating the absence of genuine issues of material fact, the burden shifts to the nonmoving party "to set forth specific facts showing that there is a genuine issue for trial." *Young v. Prince George's County*, 355 F.3d 751, 754 (4th Cir.2004). "If factual issues remain, summary judgment is not appropriate and the questions must be put to a jury." *Cerra v. Harvey*, 279 F.Supp.2d 778, 782 (S.D.W.Va.2003) (Haden, D.J.). However, "[a] mere scintilla of evidence is not enough to create a fact issue; there must be evidence on which a jury might rely." *Barwick v. Celotex Corp.*, 736 F.2d 946, 958–59 (4th Cir. 1984). In determining whether summary judgment is proper, the Court must view the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Figgie Int'l, Inc. v. Destileria Serralles, Inc.*, 190 F.3d 252, 255 (4th Cir.1999).

### C. The "Contracts"

At issue in these motions is the Court's interpretation of two documents signed by Peters on the morning of the rafting trip.[5]

---

5. The parties agree that West Virginia law controls this analysis. *See Erie R.R. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) ("Except in matters governed by the Federal Constitution or by Acts of Congress, the law to be applied in any case is the law of the State."); *Johnson v. Neal*, 187 W.Va. 239, 418 S.E.2d 349, 352 (1992) (West Virginia follows the "ancient doctrine of *lex loci contractus*"). Because the contracts at issue were made and to be performed in West Virginia, the Court concurs that West Virginia law applies.

New River Scenic contends that both are legally binding contracts that obligate either Peters or Fort Johnson to indemnify New River Scenic against the wrongful death suit filed by Ms. Johnson. Alternatively, New River Scenic claims that Peters had been vested with sufficient authority by Ms. Johnson to bind her to the agreements through his signature. The first document in question purports to be a release of liability and an indemnification agreement, while the second purports to be only a release of liability. The Court first addresses the release of liability, as it is common to both documents, and then turns to the alleged indemnification agreement between New River Scenic and Fort Johnson, Peters or Ms. Johnson.

### 1. Release of liability

To the extent that either document purports to be a "release of liability," this Court's analysis is governed by the West Virginia Supreme Court's decision in *Murphy v. North American River Runners, Inc.*, 186 W.Va. 310, 412 S.E.2d 504 (1991). In *Murphy*, the court examined a West Virginia statute that imposes a standard of care upon commercial whitewater guides. *Id.* at 511; *see also* W. Va.Code § 20–3B–3(b). The court held that an anticipatory release of liability (such as those present in the instant case) that "purports to exempt the defendant from tort liability to the plaintiff for the failure of the defendant's guide to conform to the standard of care expected of members of his occupation . . . is unenforceable." *Id.* at 512. Ms. Johnson's allegations go beyond common law negligence; her amended complaint claims that the raft operator's conduct was "reckless," "intentional," and in contravention of the standard of care imposed by the West Virginia Whitewater Responsibility Act. (Amended Compl., ¶¶ 13, 15, 19, 20.) The Court anticipates giving a jury an instruction that mirrors the language of the stat-

ute and that does not rely on common law negligence definitions.

■ The Court is unable to find any language in the "release of liability" document that would support a conclusion that through it, New River Scenic's conduct was to be indemnified by a third party. It is, therefore, clearly unenforceable under the rule announced in *Murphy*. The only language that could possibly justify a claim for indemnification is the following:

> I, on behalf of myself, my personal representatives and my heirs hereby voluntarily agree to release, waive, discharge, hold harmless, defend and *indemnify* NEW RIVER SCENIC WHITEWATER TOURS, Inc. and its owners, agents officers and employees from any and all claims . . . [that] may arise out of my use of [New River Scenic's] equipment or my participation in Outfitter Guide Services activities.

(emphasis added). The word "indemnify," however, is not a cantrip that magically transforms the plain language of the contract. Every clause of the second agreement signed by Peters is language that can only be construed as an agreement between a whitewater participant and New River Scenic. The Court would expect that a contract by one party to indemnify another party from harm that should befall a third party to contain language to that effect (*e.g.*, "I agree to hold harmless, defend, and indemnify New River Scenic for any claims that may arise from [*some other person's* ] participation in the upcoming rafting trip."). The consistent use of the first person in the release of liability contract eliminates any possibility that the document could be read as a third party indemnification agreement.

Standard boilerplate releases that are executed between a participant in an activity and that activity's commercial sponsor regularly contain the word "indemnity" or

one of its variants, and do not alter the true nature of the document: a release from liability. The agreement deemed as contrary to public policy by the *Murphy* court, in fact, called itself an "indemnity agreement." 412 S.E.2d at 508. Because the enforceability of this type of agreement was clearly precluded by *Murphy*, this Court finds that the second document is wholly unenforceable. Accordingly, New River Scenic may not introduce it or any evidence regarding its existence at trial.

## 2. Indemnification

■ While Lindsay could not have validly executed an anticipatory release agreement-and, therefore, none could have done so on her behalf [6]-West Virginia law would not prevent either Peters or Fort Johnson from entering into a contract of indemnification with New River Scenic. *See, e.g., Marlin v. Wetzel County Bd. of Educ.*, 212 W.Va. 215, 569 S.E.2d 462, 468 (2002) ("Indemnification and hold harmless agreements are a means of shifting the financial consequences of a loss, and are essentially non-insurance contractual risk transfers."); *Dalton v. Childress Serv. Corp.*, 189 W.Va. 428, 432 S.E.2d 98, 101 (1993) ("[I]ndemnity clauses serve [West Virginia's] goals of encouraging compromise and settlement by reducing settlement discussions to bilateral discussions, by encouraging adequate levels of insurance, and by allowing the parties to a contract to allocate among themselves the burden of defending claims."). Nevertheless, this Court may only construe the agreement signed by Peters as one in which either he or Fort Johnson agrees to indemnify New River Scenic if the language of that contract manifests that this was what the parties intended.

■ In any contract dispute, a court's first duty is to determine whether the contract is ambiguous. "Contract language is considered ambiguous where an agreement's terms are inconsistent on their face or where the phraseology can support reasonable differences of opinion as to the meaning of words employed and obligations undertaken." *State ex rel. Frazier & Oxley v. Cummings*, 212 W.Va. 275, 569 S.E.2d 796 (2002) (syl. pt. 6). If a contract is deemed ambiguous, the court looks to "the parties' relationship to glean the parties' intent in entering into the agreement under scrutiny." *In re Joseph G.*, 214 W.Va. 365, 589 S.E.2d 507, 512 (2003).

■ Unlike the release of liability signed by Peters, the form bearing the phrase "indemnification agreement" in its title could arguably be construed as an attempt to shift the financial consequences of a loss from one party to another. The most pertinent clause of the contract, whereby, "the undersigned parent and/or guardian of the minor, for themselves and on behalf of the minor, join in the foregoing waiver and release and stipulates and agrees to save and hold harmless, indemnify, and forever defend New River Scenic Whitewater Tours, Inc. from and against any claims .. and negligence made or brought by the minor or by anyone on behalf of the minor . . ." is ambiguous in at

---

**6.** As previously explained, *Murphy* makes clear that such releases are contrary to public policy and unenforceable; the Court sees no distinction between an individual entering into such a contract herself and an agent of that individual binding her to an unenforceable contract. Further, it is of course well settled that where a principal (here, Lindsay) lacks contractual capacity by reason of infancy, any contract entered into on her behalf by her agent (purportedly, Peters) would be voidable. *See, e.g.,* Restatement (Second) Of Agency § 20, cmt. d ("The contract of an infant to employ an agent is voidable by him, as is any contract made for him by such agent, except a contract for necessaries.").

least two respects. First, the phrase "for themselves and on behalf of the minor" is ambiguous on its face. If the contract were merely a release, the parent would not need to waive liability "for themselves," but only "on behalf of the minor." Similarly, if the agreement is one of indemnification, the signatory would need to bind only himself, with no need to sign "on behalf of the minor." An argument could be made, then, that reading the contract only as a release of liability and not as an indemnification agreement would be to read the words "for themselves" out of the contract.

The contract also contains a latent ambiguity-that is, "one that is not apparent upon the face of the instrument alone." *Kopf v. Lacey*, 208 W.Va. 302, 540 S.E.2d 170, 175–76 (2000) (quoting *Collins v. Treat*, 108 W.Va. 443, 152 S.E. 205, 205 (1930)). This is because, as extrinsic evidence more than adequately demonstrates, Peters was certainly not Lindsay's "parent." He was also not Lindsay's "guardian." Black's Law Dictionary defines "guardian" as:

> A person lawfully invested with the power, and charged with the duty, of taking care of the person and managing the property and rights of another person, who, for defect of age, understanding, or self-control, is considered incapable of administering his own affairs.

BLACK'S LAW DICTIONARY 706 (6th ed.1991). Nothing in the record indicates that Peters had so sweeping a mandate. At most, he was given permission by Lindsay's custodial parent to transport Lindsay to West Virginia for the purposes of participating in a mission trip that would culminate in a rafting trip on the New River. He had no authority, either express or implied, to manage Lindsay's "property and rights."

More compelling than a legal dictionary's definition, though, is the understanding of the parties themselves as to the significance of Peters' signature. Richard Smith, the owner of New River Scenic, testified in his deposition:

Q. Okay, so who was expected-on behalf of the company, who was expected to sign on behalf of the minors?

A. Somebody over 18 that was responsible for the trip.

Q. You didn't necessarily require a parent's signature?

A. No.

Q. Okay. Basically an adult that was a chaperon on the youth trip?

A. Right. People go on vacation and they will have friend's [*sic*] daughters and that and don't necessarily have a release, but they will sign, you know.

Q. In this case, having the youth pastor at Fort Johnson Baptist Church sign the release and indemnity agreements wasn't an unusual occurrence, was it?

A. No.

Q. When a representative of a youth trip signs a release and indemnity agreement such as what you have here, just as in your mind as the president, I assume, of the corporation, what did you think or how did you think that the person was signing it? What I mean is were they signing it for the church or were they signing it individually or were they signing it on behalf of the minor releasing any injury that might occur to the minor?

A. I would just assume they had permission to sign for the minor. I don't know how. I assume that they had a general release, and then, you know.

Q. So they are signing it in the place of the parent is what I am asking.

A. Right.

Q. Did you ever require, when these trips come through, did you ever require the responsible adult to provide you with

a copy of their release or authorization that a parent might have signed?

A. No.

Thus, New River Scenic had no expectation that Peters was signing on his own behalf. While Smith's testimony is ambiguous as to whether the company would have viewed his signature as binding Lindsay (and therefore making the document an invalid anticipatory release under the rule announced in *Murphy*) or the mother (and therefore, at least arguably, creating an indemnity agreement), neither his testimony nor anything else in the record supports the position that Peters' signature was intended or understood to create a contract of indemnification between Peters and New River Scenic.

Similarly, New River Scenic points to no evidence that would permit a reasonable jury to conclude that Peters was acting as an agent for Fort Johnson. The name of the church does not appear anywhere on the purported indemnity agreements. New River Scenic has failed to proffer a shred of extrinsic evidence that would permit a jury to find that Fort Johnson entered into an indemnification agreement with it. New River Scenic's entire argument on this issue can be summarized:

> Without specific, express, or implied authorization to sign the Indemnification Agreement on behalf of the decedent, Peters could only have signed on behalf of the Church and/or himself.

This is insufficient to overcome a motion for summary judgment. *See, e.g., Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir.1985) ("The nonmoving party ... cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another."). That Peters lacked authority to contract on Johnson's behalf does not mean that he entered into an agreement on his own behalf or on Fort Johnson's behalf. In defending against summary judgment, New River Scenic had

an obligation to adduce evidence that either Peters or Fort Johnson has a duty to indemnify it. It has failed to do so.

While the facts thus far discussed make clear that neither Peters nor Fort Johnson was a party to the indemnification agreement, New River Scenic has raised the possibility that the agreement is a valid contract of indemnification between itself and Karen Johnson. Both Ms. Johnson and Fort Johnson have argued, however, that because the language of release of liability contained within the agreement is unenforceable, the indemnity agreement is likewise unenforceable. In order to determine whether a reasonable jury could find that Peters could bind Ms. Johnson to an enforceable indemnity agreement, the Court must address three issues: (1) whether the language of indemnification can be severed from the language of release; (2) whether, in a context in which a release of liability is unenforceable because it is contrary to public policy, a parental indemnity contract is enforceable under West Virginia law; and (3) whether any facts exist that might support a finding of an agency relationship between Ms. Johnson and Peters.

■■■■ "Whether a contract is entire or severable is a determination to be made by the court according to the intention of the parties and such intention shall be ascertained from a consideration of the subject matter of the contract, a reasonable construction of the terms thereof and the conduct of the parties during their negotiations, all of which should be viewed in the light of the surrounding circumstances." *L.D.A., Inc. v. Cross*, 279 S.E.2d 409 (1981) (syl. pt. 1). Nonetheless, "there is no well defined rule which determines in all cases what contracts are severable and what are entire." *Quinn v. Beverages of W. Va.*, 159 W.Va. 571, 224 S.E.2d 894, 900 (1976). In the instant case, were the Court limited

to consideration of only the text of the indemnification agreement, it might well conclude that the language of release is not severable from the language of indemnification. Because extrinsic evidence may be relied upon in determining severability, though, the Court reaches the opposite conclusion. To the extent that Ms. Johnson and New River Scenic entered into any contracts, they did so through two separate documents. As noted, while release of liability is common to both documents, potentially valid language of indemnification is only present in one. Those circumstances would support a conclusion that if Peters had the authority to bind Ms. Johnson, then Ms. Johnson and New River Scenic intended to enter into a set of agreements with two, distinct provisions. The intent of the parties is therefore best served by severing the language of release from the language of indemnification. The Court finds that in doing so, it would not impermissibly rewrite the contract. Thus, the Court concludes that there exists a potentially enforceable, potentially binding contract of indemnification.

Having found that first document signed by Peters can be construed as a contract of indemnification between Ms. Johnson and New River Scenic (if there exist sufficient facts to permit a jury to so find), the Court turns to its next inquiry: whether under West Virginia law, the two parties could enter into an enforceable indemnification agreement under the circumstances presented here. The Court notes here that this legal question is narrow, and involves only parental indemnification agreements arising from contexts in which a release of liability would be unenforceable. The Court need not-and does not-analyze whether a parental indemnification agreement can ever be enforceable.

■ The West Virginia Supreme Court has not addressed the enforceability of parental indemnification agreements.

Therefore, this Court's task is to predict what that court would decide were it confronted with this issue. *See, e.g., Doe v. Doe,* 973 F.2d 237, 240 (4th Cir.1992). In making its prediction, this Court may rely upon, among other things, "canons of construction, restatements of the law, treatises, recent pronouncements of general rules or policies by the state's highest court, well considered dicta, and the state's trial court decisions." *Wells v. Liddy,* 186 F.3d 505, 528 (4th Cir.1999). Following these precepts, the Court believes that the West Virginia Supreme Court would find that the indemnification agreement at issue here is unenforceable.

■ Relying on the *Restatement (Second) of Contracts* § 195(2)(b)-(c), the West Virginia Supreme Court in *Murphy* held that a clause in an agreement exempting a party from tort liability is unenforceable on grounds of public policy if the agreement would exempt a party from liability arising from that party's failure to comply with a safety statute, as "the safety obligation created by the statute for such purpose is an obligation owed to the public at large and is not within the power of any private individual to waive." 412 S.E.2d at 509. In the circumstances presented by the instant case, the Court is unable to find a practical distinction between a waiver of liability executed by a parent on behalf of a minor and an agreement through which a parent agrees to indemnify a third party for any harm that may befall a minor through the third party's failure to comply with a safety statute. If a parent were able to waive liability on behalf of a minor, the responsibility for paying for any harm suffered by the minor (in particular, medical expenses) would necessarily be borne by the parent, who is obligated to care for her child. Similarly, a parent who indemnifies a third party shifts the responsibility for paying for the

financial consequences of harm that befalls the minor as the result of that third party's illegal conduct. In both situations, then, the result is identical: a tortfeasor who fails to comply with a safety statute is able to shift his financial responsibility for his tortious conduct to the parent of the minor victim. If that shift is unacceptable when the applicable document is a "release of liability," then that shift must necessarily also be unacceptable if the applicable document is styled an "indemnification." Thus, the West Virginia Supreme Court's holding in *Murphy* compels the conclusion that a parent may not indemnify a third party against the parent's minor child for liability for conduct that violates a safety statute such as the Whitewater Responsibility Act.

While the principles expressed in *Murphy* are sufficient to support this Court's analysis, other factors further undergird the conclusion reached in this case. First, allowing a parent to indemnify a third party for its tortious conduct towards the parent's minor child would result in a serious affront to the doctrine of parental immunity. *See Courtney v. Courtney*, 186 W.Va. 597, 413 S.E.2d 418, 427–28 (1991) (explaining that subject to limited exceptions, parental immunity remains a viable doctrine in West Virginia). If a parent could enter into a binding contract of indemnification regarding tort injuries to her minor child, the result would be that the child, for full vindication of his legal rights, would need to seek a recovery from

his parent.[7] This would clearly abrogate the strong West Virginia public policy to "preserve the peace and tranquility of society and families by prohibiting such intrafamily legal battles." *Cole*, 482 S.E.2d at 926.

■ In interpreting recreational operator liability statutes, the West Virginia Supreme Court has not hesitated to rely on case law from other jurisdictions. *See, e.g., Murphy*, 412 S.E.2d at 509–10; *Lewis v. Canaan Valley Resorts, Inc.*, 185 W.Va. 684, 408 S.E.2d 634, 642 (1991) (discussing constitutionality of limitation of liability for ski area operators). A review of the law of other states also weighs against enforcing the alleged parental indemnity agreement at issue in this case. "Agreements by parents to indemnify or hold harmless persons with respect to future claims by the parents' minor children have ... usually been invalid with respect to the minors' claims, although there is little law on point." Joseph H. King, Jr., *Exculpatory Agreements for Volunteers in Youth Activities–The Alternative to "Nerf (registered)" Tiddlywinks*, 53 Ohio St. L.J. 683, 714 n.132 (1992). A growing number of courts have embraced the conclusion reached by this Court today. *See, e.g., Cooper v. Aspen Skiing Co.*, 48 P.3d 1229, 1237 (Colo. 2002) ("As a practical matter, release and indemnity provisions in contracts signed by parents or guardians on behalf of their minor children go hand-in-hand: having invalidated release provi-

---

7. The West Virginia Supreme Court has "recognize[d] the espoused purpose of the doctrine of parental immunity is less forceful when a child dies and a wrongful death suit is brought." *Cole v. Fairchild*, 198 W.Va. 736, 482 S.E.2d 913, 927 (1996). The instant action is, of course, one for wrongful death. Nonetheless, the validity of an indemnification agreement cannot be examined from a standpoint that takes into account the severity of a child's injuries; such an analysis could create a rule whereby an indemnification would be unenforceable if a child were merely injured in a rafting accident (thus allowing full recovery from the tortfeasor) but enforceable if the child dies in a rafting accident (thus altogether precluding recovery). Further, the court in *Cole* was examining whether a parent should be permitted to recover for the death of his minor child when the parent's own contributory negligence may have itself been a proximate cause of the child's death. No such factor is at issue with respect to parental indemnity agreements.

sions, it would be contradictory to then effectively undercut a minor's rights to sue by allowing indemnity clauses that make such suits for all realistic purposes unlikely."); *Keeney v. Mystic Valley Hunt,* 2003 WL 22792318, at *3 (Conn.Super.Nov.13, 2003) (holding that parental indemnity agreements create "precisely the type of scenario that the parental immunity doctrine is designed to prevent"); *Valdimer v. Mt. Vernon Hebrew Camps,* 9 N.Y.2d 21, 210 N.Y.S.2d 520, 172 N.E.2d 283, 284–86 (1961) (where public policy would render a settlement of an infant's claims unenforceable, similar public policy interests rendered parental indemnity contract unenforceable); *Hawkins v. Peart,* 37 P.3d 1062, 1067 (Utah 2001) ("Such an agreement creates an unacceptable conflict of interest between a parent and a minor ...."). In a thoughtful, frequently cited opinion, a Tennessee court held that because under Tennessee law a parent cannot execute an exculpatory agreement on behalf of her incompetent child, public policy would preclude her from indemnifying a potential tortfeasor for harm to her child. *Childress v. Madison County,* 777 S.W.2d 1 (Tenn.Ct.App.1989).[8] The *Childress* court recognized that certain public policies could benefit from enforcing parental indemnity agreements, but concluded that these were ultimately outweighed by the same public policy that prevented a parent from executing an enforceable release of liability on behalf of a minor:

> We do not deny that there are good and logical reasons for giving effect to exculpatory and indemnification clauses exe-

cuted by parents and guardians on behalf of infants and incompetents. Risk is inherent in many activities that make the lives of children richer. A world without risk would be an impoverished world indeed. As Helen Keller well said, "Security is mostly a superstition. It does not exist in nature, nor do the children of men as a whole experience it. Avoiding danger is no safer in the long run than outright exposure. Life is either a daring adventure or nothing." Partnow, *Quotable Woman,* 173 (1977). Ultimately, this case is a determination of who must bear the burden of the risk of injury to infants and minors.

*Id.* at 7. Under West Virginia law, a whitewater operator whose conduct fails to conform with the standard of care expected by a member of his profession must bear the burden of risk of injury to those minors who are adversely impacted by his tortious conduct. Any other rule would vitiate the strong public policy principles enunciated by the West Virginia Supreme Court in *Murphy.*

 Finally, the Court notes that even if West Virginia law permitted the enforcement of a parental indemnity agreement in these circumstances, New River Scenic has failed to proffer enough evidence to permit a jury to conclude that Peters was vested with sufficient authority to bind Ms. Johnson to such an agreement. Peters could only have such authority if he could be considered Ms. Johnson's agent. "One of the essential elements of an agency relationship is the existence of some

8. Tennessee has adopted a rule whereby a parent may never execute an exculpatory agreement on behalf of a minor child. This Court is aware that no such rule exists in West Virginia. However, as the Court has explained, under West Virginia law a parent could never sign a release exculpating a third party from liability for harm befalling a minor child due to conduct that violates a safety statute. Therefore, the narrow circumstances present in the instant case, which alleges a violation of the Whitewater Responsibility Act thus making any release executed either by the victim or a parent on her behalf unenforceable, are analogous to the general rule in Tennessee that such a release is unenforceable in any circumstance.

degree of control by the principal over the conduct and activities of the agent." *Teter v. Old Colony,* 190 W.Va. 711, 441 S.E.2d 728 (1994) (syl. pt. 3). Ms. Johnson had no control over Peters' conduct while he was in West Virginia. Of course, even in the absence of actual authority, Ms. Johnson could be bound to Peters' acts if New River Scenic could show that Peters acted with "apparent authority." *See Clint Hurt & Assocs. v. Rare Earth Energy,* 198 W.Va. 320, 480 S.E.2d 529, 535 (W.Va. 1996) ("A principal is bound by acts of an agent if those acts are either within the authority the principal has actually given his agent, or within the apparent authority that the principal has knowingly permitted the agent to assume."). New River Scenic had no prior relationship with Ms. Johnson that would permit an assumption that Peters could act on her behalf, and the record is devoid of any evidence that Ms. Johnson ever took any action that would permit a reasonable person to conclude that he had such authority. New River Scenic acknowledges as much, pointing out in its response to Fort Johnson's motion for summary judgment that "it is doubtful Peters signed on behalf of the decedent inasmuch as the decedent's mother had never seen either the Indemnification Agreement or the Waiver and Release Agreement before her deposition and thus could not have given her express or implied authorization to Peters to sign on the decedent's or her [own] behalf." Therefore, even if the law of West Virginia supported New River Scenic's position, the facts of this case do not.

### IV. Conclusion

The Court finds that no genuine issue of material fact exists and that third party defendants Fort Johnson Baptist Church and John Peters are entitled to judgment as a matter of law. Accordingly, the Court **GRANTS** Third Party Defendants' Motion for Summary Judgment. Because the Court further concludes that whether the applicable documents are construed as releases of liability or parental indemnity agreements they are unenforceable under West Virginia law, the Court **GRANTS** Plaintiff's motion *in limine* and precludes the introduction of these documents into evidence at trial.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties and to publish this Order on the Court's website.